Jackson
v.
Mather.

\*JACKSON, *ex dem.* HOOKER, *against* MATHER.

EJECTMENT for a farm in Truxton, Cortland county; tried at the circuit in that county, January 25th, 1825, before THROOP, C. Judge; when a verdict was found for the defendant.

A motion was now made in behalf of the plaintiff for a new trial: and Roberts on Fraud. Conv. 554; 18 John. 425; 5 Cowen, 7; 1 John. Rep. 358; and 14 id. 498, were cited.

For the defendant were cited 3 John. Rep. 271, 269, 170, 528; 17 id. 323; 1 John. Cas. 250; 10 John. Rep. 447; 2 id. 46; and 13 id. 471.

*D. Cady & S. Sherwood* for the motion.

*J. A. Spencer*, contra.

The facts are stated in the opinion of the court; which was delivered by

WOODWORTH, J. The lessor of the plaintiff recovered judgment against Charles Stewart, which was docketed June 18th, 1821. The action was commenced at January

*Fraud is a question of law, when there is no dispute about facts. It is the judgment of law on facts and intents.*

*The law has established certain indicia, which, if they appear in relation to a contract, it will be adjudged fraudulent.*

*In most cases fraud is a mixed question of law and fact; and the jury are often called upon to draw a conclusion from equivocal facts, and suspicious circumstances.*

*Where such circumstances combine; as where a man* unembarrassed in his circumstances, on the eve of judgments against him, sold out his real estate, which was considerable, to his son-in-law, who was in low circumstances: who gave a mortgage for the purchase money; the grantor still continuing in partial possession, and exercising some control; the son-in-law acting with deference to his directions, making suspicious declarations, and actually taking a fraudulent conveyance of the grantor's personal property, and removing it out of the county, to avoid executions against the grantor, &c.; all these circumstances appearing, and not being explained on the trial; though the jury found in favor of the validity of the grant of the real estate, against a sale by the creditor; *held*, that a new trial should be granted.

The grantee, before he purchased, took the advice of a counsellor at law, upon the question, whether he could safely make the purchase, notwithstanding the pendency of the suits against the grantor. *Held*, that, though he might himself have sought that opinion, and the jury believed that he did so, and that the opinion was fairly given, it ought not to influence them in favor of the grant; as such an opinion, though honest, could not reach all the circumstances disclosed in evidence.

*Held*, also, that whether the grantee knew that the grantor intended to commit a fraud or not, was not the test of the validity of the conveyance; for without reference to the grantor's intentions, the part taken by the defendant, and his acts, might be fraudulent.

Where the question is upon the fraud in a conveyance of real estate, a fraudulent purchase of personal property by the grantee from the grantor of the real estate, made after the sale of the latter, may be received in evidence, in connection with other circumstances, to impeach the sale of the real estate.

NEW YORK,
May, 1827.

Jackson
v.
Mather.

*term, 1820. Another judgment was docketed on the same day. Two executions issued in June, 1821. Stewart's farm was sold and conveyed by the sheriff to the plaintiff.

The defendant gave in evidence a deed from Stewart to him, for the premises in question, dated June 26th, 1820; the consideration stated to be $5000. A bond and mortgage were given; $1000 payable August 15th, 1820, and the residue by instalments. There was indorsed, as received August 3d, 1820, $1000.

The plaintiff then gave in evidence an exemplification of two other judgments in favor of the plaintiff; the one against Stewart and Forbes, the other against Stewart alone. In the first, the memorandum was of May term, 1818. Verdict, May 29th, 1820. Judgment, August term, 1820, docketed May 15th, 1821. The other judgment was rendered August term, 1821.

The question arising on the case, is, whether the sale and conveyance from Stewart to the defendant was fraudulent. There is a great mass of testimony bearing on this point. The jury found a verdict for the defendant; and the application is for a new trial, on the ground that the verdict is against law and evidence; and that the judge misdirected the jury. I shall not go into a minute examination of all the evidence. There is much that is irrelevant and immaterial. I shall confine myself to such parts as appear to me deserving of weight. It seems that a long and angry controversy had existed between Stewart and the Hookers, respecting injuries in consequence of Stewart's mill-dam. Several recoveries were had against him. The last verdict was about a month before the deed in question was executed. Stewart is stated to have been a man of large property, having a stock of cattle worth $800, and not embarrassed in his circumstances, excepting so far as the expenses of several law-suits may have involved him. It is abundantly proved, that Stewart declared, before the deed was given, that he intended to put his property out of his hands; that he would pay no recovery other than that obtained in May, 1820; and that it was.

*immaterial to him, what the Hookers recovered. His fraudulent intent cannot be questioned. The defendant was his son-in-law, living at a different place, who after the purchase, removed on to the farm. It is satisfactorily proved, and the fact stands as uncontradicted, that at the time of purchase, and before that time, the defendant was considered to be destitute of property. It was proved that he paid over to Stewart $1000 ; but no attempt was made to show how he obtained the money, whose money it was, or where it was obtained. It also appeared that, at different times after the purchase, the defendant made declarations calculated to create well founded suspicions that the transaction was not fair. To one witness he said he did not know what Stewart's intentions were. He made the purchase for his own profit. When speaking of the farm, he called it our farm ; stated that he had purchased all the personal property, two days before the sheriff's sale, and that the witness must not think it strange, if some cattle came into his lot. It appeared that the cattle were driven out of the county, to avoid the execution, after the defendant had purchased them of Stewart, for about $300 or $500, and had paid on account about $200. At other times the defendant said he meant the bargain in earnest. When applied to for some timber, he said Stewart might have some objections. At a certain time, the orchard was watched. The defendant said it was none of his doings ; that he had nothing to do with it. If he could not live in more peace, he would quit ; and if the times were not better he would let the cat out of the bag, and go off and leave it, and have nothing more to do with it. It was also proved that Stewart occasionally worked on the farm ; seemed to order and direct, and have the control. The cattle were driven into Chenango county, by the defendant's order. The day before, Stewart said this must be done ; there was an execution out, and the sheriff was coming. It also appeared that the $1000 was paid in the clerk's office. The witness testified that there was a going back and forth about the money, and something was said about calling a witness to see it paid. Judge Nelson tes-

NEW YORK, May, 1827.

Jackson v. Mather.

tified *that he had been counsel for Stewart; that Stewart and defendant called on him. He drew the deed. The defendant inquired if he could buy, safely; said he knew of the litigation about the back water, and he would not purchase if it could not be done without difficulty. The witness stated the situation of the controversy, and said that so far as he was acquainted with the facts, he saw no legal objections to his purchasing; and informed the defendant, that, in his opinion, there could not be a recovery in the untried suit for back water. The judge charged the jury, that it was a question of fraud in fact, exclusively for their determination; that it was not a case of fraud in law; that the inquiry was as to the intention of the defendant, whether fraudulent or not; that if Stewart intended to defraud his creditors, and the defendant knew it, the sale was void; that if the defendant, of himself, went to judge Nelson for his opinion, and he gave the opinion he did, it would not go far to rebut the evidence of fraud; that, if the jury believed that Stewart intended to commit a fraud on his creditors, by sale to the defendant, and he knew it, they ought to find a verdict for the plaintiff, otherwise for the defendant.

Fraud is a question of law, when there is no dispute about facts. It is the judgment of law on facts and intents. (9 John. 342.) The law has established certain *indicia*, which if they appear, in relation to a contract, it will be adjudged fraudulent. In most cases, it is a mixed question of law and fact.[1] As it respects the latter, the jury

[1] By the term fraud, the legal intent and effect of the acts complained of is meant. *Tate* v. *Whitney*, Harrington's Ch. Rep. 145.

The law has a standard for measuring the intent of parties, and declares an illegal act, prejudicial to the rights of others, a fraud upon such rights, although the party denies all intention of committing a fraud. Ib.

The court will not impute fraud on slight evidence, especially after a great length of time; nor can it be presumed. *Ex'rs of Chouler* v. *Smith*, 3 Desau, 12; *Barton* v. *Rushton*, 4 Desau, 373; *Shelby's heirs* v. *Shelby's heirs*, Cooke, 181; *Meredith* v. *Nichols*, 1 A. K. Marsh. 600.

Fraud may be inquired into, as well at law as in equity; and where frauds are clearly established, the courts of law and of equity have concurrent jurisdiction. *Singery* v. *The Attorney General*, 2 Harr. & Johns. 487.

Fraud or oppression may be inferred, from great inadequacy of price, or

are called on frequently to draw a conclusion from equivo-

cal facts and suspicious circumstances.

Roberts, in his treatise on fraudulent conveyances, observes on the preventive efficacy of the statute, and the rule to be applied in judging of the acts of the parties. He says, it converts ambiguity into evidence of what it was meant to disguise; and erects, on a foundation of common experience, a sort of artificial presumption of fraudulent intentions from equivocal transactions. (Rob. on Fraud. Conv. 189.)

*In the present case, there is no single fact that would [*305] authorize the court to say, the purchase of the defendant was fraudulent. But the evidence collectively furnished a strong case for the jury to infer fraud. If it was the intention of the defendant to lend himself for the purpose of hindering, delaying, or defrauding creditors and others; if there was a secret trust; if the money advanced was in reality Stewart's, and put into the defendant's hands, only to give this the color of a *bona fide* transaction; if Stewart really had and exercised control over the farm, and received supplies from it; then the whole transaction was fraudulent and void. To draw this conslusion was the province of the jury. The question is, whether, in the sound exercise of their discretion, the weight of evidence was not that the sale was fraudulent. It appears to me that there was satisfactory evidence of fraud; and when it is considered that no explanation was given of the facts proved by the plaintiff; and which, from the complexion of the transaction, required explanation, if they were susceptible of it; and which might have been explained, if in reality the purchase

from the vendee being in a relative situation to exercise undue influence over the vendor, as a sheriff, having sundry executions against a debtor. *Gist* v. *Frazier*, 2 Litt. 118.

Inadequacy of price, so gross as to afford a strong presumption of fraud, will vitiate a contract. *Butler* v. *Haskell*, 4 Desau, 652, 687.

Vendor's remaining in possession is a badge of fraud, though it is doubtful if the property's going otherwise as to its possession than the deed points out, is absolutely fraud. Secrecy in the transaction, as where there are none present but near relations, is also a badge of fraud. *Vick* v. *Keggs*, 2 Haywood, 126. 2 Am. Ch. Dig. pp. 229, 231. tit. *Fraud*.

NEW YORK,
May, 1827.
———
Jackson
v.
Mather.

was *bona fide*, I cannot resist the inference that the sale was colorable merely. The defendant is a near connexion of Stewart. From the evidence, he must be considered as destitute of property. If he was not, he might have shown it ; and I think he was called on to do so. He had been a clerk for sometime previous ; was not in a course of business to accumulate property ; nor in a favorable situation to raise the money which Stewart required to relieve his then pressing necessity. It does not appear that he pledged the land to raise the money ; whereas, if the money was to be borrowed on the land, Stewart might, with the same ease, borrow on that security. These suspicious circumstances called on the defendant to remove the shade that hung over the purchase. Connecting this with other facts which are not akin to honest *bona fide* contracts, the case of the plaintiff was considerably fortified. Stewart seemed to have some control, and exercised it. He had some proceeds of the farm ; on what account he has not shown.

[*306]

What was the secret the defendant alluded *to in relation to the *bona fides* of the purchase. If all was fair, there was no cause to shun the light. Again ; he was dissatisfied, would quit, and leave the whole concern. All this was proper evidence. The inferences are not removed, or attempted to be removed by explanations. Until removed, they ought to have had decisive weight on the minds of the jury. In addition, it may be observed, that a strong presumption arises from the close connexion between the defendant and Stewart. The apparent fraud in removing the personal property out of the reach of the execution, and other circumstances detailed in the case, show that the defendant was not ignorant of Stewart's fraudulent intent to put his property out of his hands.

I also think the charge somewhat incorrect ; particularly in the stress that is laid on the testimony of judge Nelson. Whether the defendant went himself to judge Nelson or not, for an opinion, seems to me immaterial. No doubt the defendant wished to obtain the real opinion of the witness. That opinion was no more than this ; that notwithstanding the controversy and law-suits, the defendant might pur-

chase; by which the witness undoubtedly intended a fair and *bona fide* purchase. He gave no opinion on the facts here disclosed and relied on. For aught that appears, he had no knowledge of them.

The charge farther seems to instruct the jury, that if the defendant did not know that Stewart intended to commit a fraud, they would find for the defendant. This was not the test. Without reference to Stewart's intentions, the part taken by the defendant and his acts, might be fraudulent. Ignorance of Stewart's intent would be no protection. By this part of the charge, the jury may have supposed, that if the defendant had not knowledge of Stewart's intent, he was entitled to a verdict. The law is otherwise. Independent of this fact, the weight of evidence, in judgment of law, *is*, that the purchase was fraudulent. A new trial must be granted, with costs to abide the event.

New trial granted.