# CASES AT LAW. AND IN CHANCERY

DETERMINED IN THE

# SUPREME COURT OF THE STATE OF COLORADO.

## DECEMBER TERM, 1885.

### BURR ET AL. V. CLEMENT ET AL.

1. When goods in the hands of an assignee are attached by a creditor of the assignor, and the assignee interpleads, he is deemed to admit *prima facie* the legal possession of the attaching creditor, and the burden is upon the interpleading claimant to show a superior title in himself.

2. In the absence of statutory prohibition, an assignor has the right to make such provision for the payment of attorney's fees for the necessary and proper execution of the trust; he may appoint an attorney, even his own attorney, assignee.

3. Though the law does not favor preferences, it tolerates them, and in the absence of interdicting statutes, a debtor has the right to make preferences in respect to his creditors.

4. A necessary consequence of all assignments is to hinder and delay creditors to a certain extent.

5. The hindering and delaying meant by the law as vitiating an assignment is that hindrance and delay intended to be produced by the assignor through covin and malice, or for his own benefit and advantage.

6. In such cases the question of fraudulent intent is a question of fact and not of law, but the court is not deprived of the power to pronounce the judgment of the law in any case upon the facts disclosed, whenever the duty so to do becomes apparent.

7. Whenever an assignment contains provisions which are calculated *per se* to hinder and delay or defraud creditors, although the fraud must be passed upon as a question of fact, it nevertheless becomes the duty of the court to set aside the finding if in opposition to the plain inference to be drawn from the face of the instrument.

*Error to County Court of Arapahoe County.*

THE facts are stated in the opinion.

Mr. JOHN W. HORNER, for plaintiffs in error.

Messrs. BENEDICT and PHELPS, for defendants in error.

STONE, J.   The principal question in this case involves the validity of an assignment made for the benefit of creditors.   On the 29th of November, 1880, one David Cairns made an assignment of his effects to the plaintiff in error, Burr, for the benefit of his creditors.   The said assignee immediately took possession of the property assigned, the principal portion of which consisted of a stock of goods contained in a store in the city of Denver, and which merchandise is the subject of the contention in this case.   After taking possession of the goods, the plaintiff in error put out his sign as assignee, took an invoice of the stock, and proceeded to sell the goods both at private sale and at auction, and continued so to do from the date of the assignment until the 8th of December, 1880; being personally in charge of the goods and business most of the time each day.   On the date last mentioned, the defendants in error, claiming to be creditors of Cairns, the assignor, sued out of the county court an attachment against Cairns, placed it in the hands of the sheriff, which officer on the same day levied upon and took into his possession the goods then in the store, and in the possession of said assignee under the assignment.

The plaintiff in error filed his interplea in said court, claiming the goods in question as assignee as aforesaid, and issue was joined upon the interplea. The goods so levied upon were inventoried by the sheriff at the time of the seizure at $1,880. The cause afterwards coming on for hearing, before a jury impaneled to try the issues joined on the interplea, evidence was heard on the part of the assignee, as interpleader, of the facts relating to the assignment, and what was done thereunder, and under the attachment as stated above, and it also appeared in testimony that Burr, the said assignee, was, at the time of the assignment, a clerk in the office of J. W. Horner, Esq., one of the attorneys of Cairns, the assignor.

The deed of assignment was offered in evidence on behalf of said interpleader, but was objected to by the other side, and the court, sustaining the objection, rejected the deed as evidence in the cause.

The defendants in error then moved to strike out all the testimony given in the case as to what was done under the assignment, which motion was granted, and the jury instructed to disregard said testimony. The defendants in error offered no evidence whatever in the case, whereupon the court directed the jury to find a verdict for said defendants in error, and to find the property in them, which verdict was accordingly given by the jury from their box, and judgment was rendered by the court in accordance therewith. Exceptions to these several rulings of the court were duly taken by plaintiffs in error, motion for new trial made and overruled, etc. The errors assigned go to these rulings of the court in the rejection and striking out of evidence, and in directing the verdict of the jury.

The first point made and discussed by counsel for plaintiff in error is that, since defendants in error offered no evidence in the case of any indebtedness of Cairns to them, they were not entitled to the judgment, irrespective of the character of the assignment; that possession of

the goods in the assignee at the time of seizure under the attachment was *prima facie* evidence of right of possession, and this presumptive right was not overcome by any evidence of right in the attaching creditors, for that, until they had shown a debt existing from Cairns to them, they were not in a position to question the claim of the assignee. Several authorities are cited to this point, but upon examination we do not find that they sustain the position claimed here. The correct view, as it seems to us, is that the interpleader in such case, by interpleading, is deemed to admit *prima facie* the legal possession of the attaching creditor, and sets up a right in himself to overcome the presumptive or supposed right founded upon the legal process of the attachment proceeding; the burden of proof is upon the interpleading claimant to show a superior right in himself; if he fails in this, it leaves the possession and presumptive right thereof in the attaching creditor, as at the beginning of the contest upon the interplea.

The first presumption of right founded upon the possession of the assignee prior to the attachment is shifted to the attaching creditor as soon as the property in controversy is by the attachment process taken into the custody of the law, and the burden of proof is therefore cast upon the interpleading claimant. Such interpleading claimant can have no interest in the contest as to an indebtedness between the attaching creditor and the attachment debtor other than the casual interest which, by the statutory procedure, brings him in as a third party to try his individual right as a claimant of the property in controversy. In this case the attachment debtor, Cairns, filed no plea, and hence it is claimed that, if the interpleader failed to establish his right to the property in question, the attachment creditor was entitled to judgment as on a default. Whether, in such a case, judgment by default should have been regularly taken and entered is a question not pertinent to our present inquiry.

For the reason of the rule that in such cases the interpleader, by his interpleading, is deemed to have admitted the facts of the relationship between the attachment creditor and his debtor, see *Harrison v. Singleton,* 2 Scam. 21; *Dexter v. Parkins,* 22 Ill. 144.

The objections made to the deed of assignment are that Burr, the assignee, was a clerk in the office of Mr. Horner, one of the attorneys of Cairns, the assignor, and also because of the following provisions contained in the assignment deed, to wit: "In trust, nevertheless, for the uses and purposes following; that is to say, to sell and dispose of, collect, recover and receive the said properties, moneys and effects, and generally to convert the same into money, and, after defraying all lawful costs, expenses and charges for execution and carrying into effect the trust hereby created, then to apply the said moneys and proceeds as follows: 1. To the payment of reasonable attorneys' fees, due and to become due, to J. W. Horner and G. C. Norris for professional services rendered, or to be rendered, for the benefit of the property assigned."

It is contended by counsel for defendants in error that, by reason of the foregoing provisions in the deed, and the relation of the assignee to the attorneys of the assignor, as above stated, the assignment was fraudulent and void upon its face; that the evidence as to the facts in the case was all on one side, admitted by the other side, and therefore presented no question of fact to be submitted to the jury; that it was a case of fraud in law, and not of fact; that it was, therefore, a question of law for the court to determine, and that, the instrument being held void, the evidence of what was done under it went for nothing, and was properly stricken out.

As a reason for holding the deed of assignment void, it is insisted that the relations of the assignor and assignee, to the attorneys named, as preferred creditors for services rendered and to be rendered in and about the matter of

the property assigned, are a restriction upon the acts of such assignee; and authorities are cited to the effect that the assignment must be unconditional and unrestricted; that here the judgment and discretion of the assignee are not free from control by the attorneys of the assignor; that this provision as to the attorneys tends to hinder and delay creditors, since they cannot be paid until the fees are paid to said attorneys for services of future and indefinite extent and value, and in respect to litigation which the very terms of this assignment would tend to protract.

In support of the holding of the court below that the deed was void for the reasons stated, counsel for defendants in error rely chiefly upon the case of *Mead v. Phillips et al.* 1 Sandf. Ch. 83, where a deed of assignment was held fraudulent, as against creditors, because, among other objectionable provisions, it contained a clause, succeeding the direction for the payment of the several classes of creditors, in the following words: "Excepting, nevertheless, in all cases, the right of payment, and deducting from the payments hereinbefore provided for to be made, all the expenses necessarily incurred in the execution of this trust; and also to retain out of the proceeds of this assignment all costs and expenses necessarily incurred by me or my assigns hereinbefore named in defending any suits that may hereafter be instituted against me or them, or either of them, by any creditor or other person or persons for any matter or thing growing out of, or in any way connected with, this assignment."

In commenting upon this provision of the deed the chancellor remarks: "It is a standing notice to all creditors that any effort which they make to question the amount due to them, or to others, as stated in the assignment, or to compel its execution, will be resisted by the debtor; that he will contest such efforts to the end of the law, and will then subtract the costs and expenses in-

curred by him in so doing from the fund to which they were looking for a dividend."

An examination of that case shows, as the chancellor found, that the whole transaction was saturated with fraud. But that the chancellor did not entertain the opinion or hold that an assignment would be rendered void merely because it authorized the assignee to pay counsel for services rendered for the benefit of the trust or in its proper execution, is evident not only from an examination of that case but also from what is said by the same court in another case, where, in reference to a clause constituting the assignee the attorney of the assignor, and empowering him, "in his or their names, or otherwise, to commence, continue, maintain and prosecute to effect, and also to defend all law, equity and other proceedings which they may deem necessary to the execution of the said trusts," the chancellor says: "I do not perceive in this provision any marked evidence of fraud, nor, indeed, much that the assignee could not have done if the whole clause had been omitted." *Van Nest v. Yoe et al.* 1 Sandf. Ch. 4.

Upon the hearing of this case below, Mr. Norris himself testified that he and Mr. Horner had been Cairns' attorneys previous to this case; that several other cases were in litigation and still undecided, but there was no evidence that Cairns was indebted to them for services in such other cases, or that any payment for future services therein was intended to be embraced in the provision of the deed referred to, and, so far as the evidence goes, it may well be questioned whether anything appears, either in the deed or outside of it, which is inconsistent with the meaning that the attorneys' fees provided for were intended for services rendered in the proper and beneficial execution of the trust.

This case arose before there was any statute of this state relating to assignments of this character, and must therefore be determined without reference to our present

statute upon the subject.    In the absence of any statutory
legislation forbidding it, an assignor has the right to
make such provision for the payment of attorneys' fees
for the necessary and proper execution of the trust, and
may appoint an attorney, even his own attorney, the as-
signee; and the presumption as to the conduct of the
assignee, and of attorneys in the premises, should be in
favor of fairness.    Burrill on Assignments, sec. 417, and
cases cited.

In view of all of the circumstances of the case, not the
least of which is that the assignee took immediate pos-
session of the property upon the assignment thereof, and
from that time to the date of the attachment seizure had
been engaged in the discharge of his duties, which are
not pretended to have been exercised otherwise than in
good faith, honesty and advantage, in the execution of
the trust, we think the court below erred in taking from
the jury the question of fraud in the assignment.    Where
fraud is apparent on the face of the instrument it is
generally considered a question of law for the court, but
comparatively few instruments bear this impress.    Unless
the terms of the assignment can be said to necessarily
result in fraud, the question of fraud becomes one of
intent.    It is objected here that a preference is given to
the attorneys named, and also that the terms are calcu-
lated to hinder and delay creditors.    True, the law does
not favor preferences, but it tolerates them, and in the
absence of interdicting statutes, a debtor has the right
to make preferences in respect to his creditors; and a
necessary consequence of all assignments is to hinder
and delay creditors to a certain extent.    The hindering
and delaying which is meant by the law as vitiating an
assignment is that which is intended to be produced by
the assignor in making the assignment, through motives
of covin and malice or for his own benefit and advantage.
Our statute declares that conveyances and assignments
"made with the intent to hinder, delay or defraud cred-

itors   *   *   *   shall be void," as against the persons so
hindered, delayed or defrauded (Gen. Stats. sec. 1526);
while by section 1529 it is enacted that "the question of
fraudulent intent, in all cases arising under the provis-
ions of this title, shall be deemed a question of fact, and
not of law."

Fraud is sometimes deemed a question of law, some-
times one of fact, and often a mixed question of law
and fact.   In New York, where there is a statute which,
like ours, provides that fraudulent intent shall be deemed
a question of fact, and not of law, there have been con-
flicting opinions upon the distinctions between fraud in
fact and fraud in law.   In the earlier cases in the supreme
court the inclination was to bring the question within
the province of the court by declaring it to be, in most
instances, a question of law.   In *Sturtevant v. Ballard*,
9 . Johns. 342, it was said by Chief Justice Kent that
fraud is a question of law, and especially where there is
no dispute about the facts.   It is the judgment of the
law on facts and intents.   The same opinion was ex-
pressed in *Jackson v. Mather*, 7 Cow. 301; but subse-
quently in the court of errors, in *Seward v. Jackson*, 8
id. 406, a different view was held.   "Strictly speaking,"
it was said, "there is no such thing as fraud in law;
fraud or no fraud is, and ever must be, a question of
fact; the evidence of it may be so strong as to be conclu-
sive, but it is still evidence, and as such must be sub-
mitted to a jury."   And in *Jackson v. Timmerman*, 7
Wend. 436, Mr. Justice Sutherland uses this emphatic
language: "There is no such thing as fraud in law as
distinguished from fraud in fact.   What was formerly
considered as fraud in law, or conclusive evidence of
fraud, and to be so pronounced by the court, is now but
*prima facie* evidence, to be submitted to and passed upon
by the jury."

A different exposition was afterwards given in con-
struing the statute, which made a fraudulent intent a

question of fact, and a distinction was drawn between fraud and fraudulent intent. It was held by the chancellor that "the Revised Statutes have not made the fraud itself a question of fact; neither, indeed, was it possible for the legislature to do so; for when a party has intentionally executed an assignment or conveyance of his property, which must hinder and defraud his creditors of their just demands, the question whether the conveyance is fraudulent or not necessarily becomes a question of law and not of fact. The object of the statute was to reach a particular class of cases, where the conveyance would not necessarily have the effect to defraud creditors or others of their rights, and where the question of fraud must, of course, depend upon the intent with which the conveyance was executed. In all such cases the question of fraudulent intent is declared to be a question of fact and not of law." *Cunningham v. Freeborn,* 3 Paige, 557; also same case in 11 Wend. 240.

We regard the foregoing as a reasonable and correct interpretation of the object and meaning of this statute; but such view is not regarded as depriving the court of the power to pronounce the judgment of the law in any case, upon the facts disclosed, whenever a duty so to do becomes apparent to such court. In the case of *Dunham v. Waterman,* 17 N. Y. 9, Mr. Justice Selden, in commenting upon the case last above cited, says: "It follows from the reasoning of Mr. Justice Nelson, which I regard as unanswerable, that whenever an assignment contains provisions which are calculated *per se* to hinder, delay or defraud creditors, although the fraud must be passed upon as a question of fact, it nevertheless becomes the duty of the court to set aside the finding if in opposition to the plain inference to be drawn from the face of the instrument. A party must, in all cases, be held to have intended that which is the necessary consequence of his acts."

The supreme court of Minnesota, in referring to the New York cases, conclude as follows: "We gather as a result of the investigations of the New York courts that the question of fraudulent intent is a mixed question of law and fact; that is, that the existence of a certain intent is a question of fact for the jury (when not disclosed by the papers themselves), and for the court to declare whether such intent be fraudulent or otherwise." *Gene v. Murray*, 6 Minn. 305. See, also, *Baldwin v. Peet*, 22 Tex. 708.

For a full discussion of this subject and review of the authorities, see Burrill on Assignments, ch. 25.

We conclude, therefore, that looking to the deed of assignment itself in this case, we cannot say that its terms and provisions necessarily involve fraud, or disclose such an obvious intent to fraudulently hinder and delay creditors as to warrant a court in pronouncing it fraudulent and void upon its face. Those provisions objected to by defendants in error, and for which it appears the court rejected the instrument as void and inadmissible in evidence, are at most but badges of fraud, susceptible of explanation, like all *indicia*, and may or may not be evidence of a fraudulent intent. We think the deed should have been admitted in evidence, and, together with the testimony heard in this case, have been submitted to the jury.

For the error of the court in the respect above indicated the judgment must be reversed, and the cause remanded for a new trial.   *Reversed.*