No. 8951.

CORYELL *v.* OLMSTEAD ET AL.

1. FRAUD—*Preferring Creditor.* Even by an insolvent, is not iniquitous.

2. —— *Confession of Judgment,* for a debt justly due is not a fraud upon other creditors, even though it affords a preference, and may have the effect to delay other creditors. That the defendant might have delayed the creditor in whose favor the confession is made, and that the confession is to bear interest at less than the legal rate, and the debtor is promised the assistance of creditor in disposing of his property, *held* no evidence of fraud.

3. APPEAL AND ERROR. On bill by creditors against an insolvent debtor to vacate a confessed judgment, a receiver of all the properties of the insolvent was appointed, without hearing the creditor in whose favor the judgment was confessed, although he was party to the action. Afterwards the judgment confessed was vacated, and the execution levied thereunder set aside. Upon reversing the residue of the judgment, the order appointing the receiver was not disturbed.

*Error to Garfield District Court, Hon. John T. Shumate, Judge.*

Mr. JOHN L. NOONAN, Mr. J. W. DOLLISON, for plaintiff in error.

Mr. EDWIN C. KINGSBURY, for defendant in error.

GARRIGUES, J.

DEFENDANTS in error, Olmsted and Kingsbury, commenced this suit November 15, 1913, as a direct attack upon a confessed judgment for $7,809.15, entered against one Fawcett July 22, 1913, in favor of Coryell, plaintiff in error. The purpose of the action was to secure the cancellation of the judgment, enjoin and restrain the sheriff of Garfield County from selling the property of Fawcett on execution, and to procure the appointment of a receiver to take charge of the property.

*The Pleadings.*

The complaint alleges that June 24, 1913, Kingsbury recovered judgment against Fawcett for $170.40, on which

execution was issued and placed in the hands of the sheriff August 21, 1913; that September 15, 1913, Olmsted obtained a judgment against Fawcett for $468.26, and forthwith caused a transcript to be filed in the office of the clerk and recorder's office; that no part of the judgments has been satisfied; that Fawcett owes more than $22,000.00 and is insolvent; that she is the owner of 560 acres of land in Garfield County; that July 22, 1913, in case No. 1655, while insolvent, and for the purpose of hindering, delaying and defrauding her creditors, Fawcett confessed judgment in favor of Coryell in the sum of $7,809.15, in a suit brought by Coryell against Fawcett in the District Court of Garfield County; that the judgment in that case is based upon certain promissory notes alleged to have been given by Fawcett to Coryell, which were not exhibited in court nor tendered for cancellation, and, if they existed—which is denied—it is alleged were executed without valid consideration, and for the purpose of hindering, delaying, defrauding and cheating her creditors; that September 7, 1913, Coryell caused the sheriff to levy upon the property of Fawcett, and is about to sell it on execution; that there was filed with the confession of judgment an agreement of date July 21, 1913, signed by Coryell, to the effect that the judgment should not draw a greater rate of interest than 6 per cent from date until satisfied; that the judgment so confessed upon the suit and complaint of Coryell was entered by collusion and fraud between Fawcett and Coryell, for the purpose of giving preference to Coryell, who had no other security, and that plaintiffs and other creditors will be defrauded of their just claims unless a receiver be appointed to take charge of the property and assets of Fawcett. Prayer that the judgment be set aside, and the suit in that case dismissed; that a receiver be appointed, and Coryell enjoined from selling under execution, and for general relief. November 17, 1913, Fawcett, by separate answer, admitted all the allegations of the complaint and petition, consented to the appointment of a receiver, and alleged that she owned other property in addition to that

described in the complaint.   November 18 the court entered
a finding on the pleadings, that the actual parties in in-
terest were Fawcett and plaintiffs, and without notice to
Coryell, entered an order appointing a receiver of all the
property and effects of Fawcett, and enjoining and restrain-
ing Coryell from proceeding further in any manner under
the judgment of confession against Fawcett in case No.
1655.   January 5, 1914, Coryell answered, alleging that
July 22, 1913, she obtained judgment by confession against
Fawcett for $7,809.15, upon three promissory notes which
were given for a valid consideration, and were considered
merged in the judgment; admitting the sheriff levied on
the property, and had a custodian in charge thereof until
displaced by the receiver; that it was agreed, in anticipation
of the judgment that it should draw 6 per cent interest;
but denying that a sheriff's sale on execution will defraud
plaintiffs, or any of Fawcett's creditors, of their just dues,
or that the judgment was confessed for the purpose of hin-
dering and delaying creditors.

*The Evidence.*

The uncontradicted evidence shows that Fawcett rented
from Coryell what is known as the Red Soil Ranch for the
years 1912 and 1913, at the agreed price of $600.00 a year;
that March 21, 1913, Fawcett owed Coryell $600.00 for the
rent of 1912, $49.25 for hay, and $100.00 for a gasoline
engine, a total of $749.25; that Coryell received from Faw-
cett, to be credited on this account, $225.00, leaving a bal-
ance due on settlement, of $524.25, for which she gave
Coryell a promissory note dated March 21, 1913, payable
in thirty days, with interest at 10 per cent, no part of
which was paid, and which entered into the confession of
judgment; that March 31, 1913, Fawcett gave Coryell an-
other note for $600.00, the consideration being the rent
for the ranch for 1913, with interest at 10 per cent, no
part of which was paid, and which also entered into the
confession of judgment; that January, 1911, negotiations
were commenced by Fawcett which resulted in the pur-
chase, or agreement to purchase from Coryell, what is

called the Pierce tract, at the agreed price of $6,000.00. The deed to Fawcett was made and acknowledged in Denver April 26, 1911, at which time a note for $6,000.00 was prepared, representing the purchase price; that the papers were not exchanged until October 20, 1911, when Fawcett signed and delivered the note to Coryell, who delivered the deed. Fawcett withheld this deed from record until July 17, 1913, when Coryell ascertained that creditors had already and were obtaining judgments against Fawcett, which were becoming liens against the land, while the $6,000.00 note for its purchase price was unsecured. This note is dated April 26, 1911, the day the deed was acknowledged, and matured January 1, 1918, with interest at 6 per cent, payable annually, the first interest payment to be due January 1, 1913. No part of this note was paid, and it was also included in the judgment by confession, less the interest, which was deducted to October 20, 1911, the date when the note was delivered and the deed accepted. It provided that in the event of non-payment of interest when the same should become due, and after thirty days' notice to Fawcett, that the $6,000.00, with accrued interest, should become due and payable. It contains another statement that the note is given for the purchase price of the land, on which it shall be a lien. Coryell began a suit on these three notes by filing a complaint in the District Court, upon which Fawcett confessed judgment July 22, 1913. As an inducement for this judgment, Coryell agreed in writing that the judgment should draw interest only at the rate of 6 per cent, the same as the $6,000.00 notes. This judgment the lower court set aside and vacated, upon the ground that Fawcett had confessed it for the purpose of hindering and delaying creditors. The court found the $6,000.00 was based upon a valid consideration, but that it was not due when the judgment was confessed, and for this reason should not prorate with other claims against the Fawcett estate. The judgment as a whole was set aside, the levy on execution vacated, and the property turned over to the receiver, thereby destroying the judgment lien Coryell had

obtained, and leaving her an unsecured creditor for the amount of the two notes, aggregating $1,124.25.

GARRIGUES, J., after stating the case as above:

1. The only point in the case relates to the finding of the court that Fawcett confessed judgment for the purpose of hindering and delaying creditors. There is not a particle of evidence upon which to base such a finding or conclusion. The court seems to have proceeded upon the theory that plaintiffs and Fawcett were the only interested parties in this suit. Not so. Coryell was vitally interested. The pleadings were not evidence against Coryell, and consti- tuted no basis for setting aside the judgment. It was the evidence given in court by Fawcett, and not her answer, that constituted her evidence against Coryell. There is no evidence to warrant an inference that the judgment was confessed wantonly, covinly, or maliciously, for the purpose of hindering or delaying creditors. Fawcett testified she purchased the Pierce tract for $6,000.00; that she con- sidered it worth that sum; that she gave her note for the purchase price, expecting and intending to pay it, and that she owned the land, and owed the note. She says Coryell represented that the confession of judgment would save costs, and promised in the event she would agree to the entry of judgment, that it should draw only 6 per cent in- terest, instead of the legal rate, and that she would hold off execution, and assist her in securing a loan on the land by which she could pay all her creditors. If true, this was only a matter between Coryell and Fawcett, was of no con- cern of plaintiff's, and tended in no way to establish that Fawcett confessed judgment for the purpose of hindering or delaying creditors.

It is evident that no judgment could be confessed, except by agreement, which must necessarily precede the judg- ment. The judgment being based upon valid obligations, the agreement in advance to confess it in no way affects its validity.

Confession of judgment is not a badge of fraud. Pre- ferring creditors, when one is insolvent, is not iniquitous,

and there is no evidence that this is a vicious judgment. It was practicing no fraud upon plaintiffs to take a confession of judgment based upon just and valid obligations, even though Fawcett was insolvent, and it worked a preference of creditors. The burden was upon plaintiffs to show that some equitable rights of creditors were invaded by the confession of judgment, which they failed to do. The court seems to have set aside the judgment merely because it hindered and delayed creditors, and this was error. *Burr v. Clement,* 9 Colo. 1-8, 19 Pac. 633; *Stockgrowers' Bank v. Newton,* 13 Colo. 245, 22 Pac. 442; *Walton v. First Nat. Bank,* 13 Colo. 265, 22 Pac. 440, 5 L. R. A. 765, 16 Am. St. 200; *Sutton v. Dana,* 15 Colo. 98, 25 Pac. 90; *Sweet v. D. & R. G. Co.,* 59 Colo. 134, 147 Pac. 669; *Eversman v. Clements,* 6 Colo. App. 224, 40 Pac. 575; *Wilson v. American Nat. Bank,* 7 Colo. App. 194, 42 Pac. 1037; *People ex rel. v. Rio Grande Co.,* 11 Colo. App. 124, 52 Pac. 748.

In *Sweet v. D. & R. G. Co.,* supra, it is said:

"We have yet to learn that there is any iniquity in consenting to a judgment upon just and valid obligations."

In *Walton v. First National Bank,* supra, it is said, at page 276:

"It is not to be understood from this opinion that, in the absence of statutory restriction, a debtor may not, under ordinary circumstances, lawfully give preference to one creditor over others; nor that it is a badge of fraud for a creditor to secure such preference."

In *Sutton v. Dana,* supra, it is said:

An insolvent "may lawfully prefer some of his creditors to others, and pay some of them in full, leaving others partially or wholly unpaid so far as he should be without means of payment. * * * The law permits an insolvent debtor to make choice of the creditors he will pay, and the mode or means by which he will make such payment, and that something beyond such preference or payment must appear before the transaction is to be considered fraudulent. The preference of creditors by a failing debtor is not necessarily fraudulent."

The court properly held there was no fraud in the account upon which judgment was based; but found it was confessed for the purpose of hindering and delaying creditors. We have seen that an insolvent debtor may prefer creditors, and it follows as a necessary consequence, if he prefers one creditor over another, either by assignment, payment, or confession of judgment, that it will hinder and delay other creditors. It would be impossible for an insolvent debtor to prefer one creditor over another without hindering and delaying other creditors, and if that is what is meant by the rule regarding hindering and delaying creditors, any preference would bring about such a result. In *Burr v. Clement,* supra, it is held that the hindering and delaying meant by the law, as vitiating an assignment, is that hindering and delaying intended to be produced by the assignor through covin, malice, or for his own benefit and advantage.

This rule applies equally well to a confession of judgment. There is not the slightest evidence that the confession of judgment in this case was covinly, or maliciously, or wantonly made by Fawcett with intent to hinder and delay creditors, or that she derived any unlawful, invalid or improper advantage, or any favor or benefit of any kind over her creditors by her action in that regard.

The court found that the $6,000.00 note was not due when judgment was confessed, and for that reason held it was not a valid claim against the estate of Fawcett. This was error. A judgment by confession is a judgment by agreement or consent. It is an admission that the demand is just and valid, and is a waiver of all technical defenses. Fawcett's own evidence shows that she could not have prevented a judgment on the $6,000.00 note, although she might have delayed it until the notice was given, or caused two suits to be instituted. Instead of doing this, she consented to the judgment by which the provision regarding the thirty days' notice was waived. No doubt she could waive the notice if she wished, and the confession of judgment certainly waived it.

The judgment is reversed and the cause remanded with directions to the lower court to enter a judgment in accordance with the views herein expressed, but without interfering with the order appointing the receiver.

Reversed and remanded with directions.

Chief Justice Hill and Mr. Justice Scott concur.