## MULFORD v. PETERSON AND WIFE.

1. An assignment of a mortgage, which is in writing, but not under seal, is, by force of the provisions of the act entitled "An act to make mortgages and other contracts assignable at law," (*Nix. Dig.* 613), sufficient to transfer to the assignee the legal estate of the mortgagee in the mortgaged premises.

2. Where the equity of redemption in mortgaged premises is conveyed to the mortgagee, the estate of the mortgagee under the mortgage will not merge, but will be kept alive in order to enable him to defend under it as against the title of another, acquired intermediate the taking of the mortgage, and the conveyance to him of the equity of redemption, if such appears to be the intention of the parties in making the conveyance, and the justice of the case is thereby subserved.

3. A deed may be avoided in a court of law, on the ground that it was fraudulently made with intent to defraud the creditors of the grantor.

4. Where a person takes a deed of another's lands, with intent to defraud the creditors of the latter, and afterwards, in pursuance of the same fraudulent arrangement, procures the assignment of a prior outstanding valid mortgage with the grantor's money, neither the deed nor the mortgage will be available as a defence in ejectment by one deriving title under a judgment and execution against the grantor.

On case certified from Cumberland Circuit.

In ejectment to recover two tracts of land—the one containing thirty-four and thirty-six hundredths acres, the other two and thirty-hundredths acres. The controversy was solely with reference to the latter parcel. The legal title to the other tract was never in William Peterson, under whom the plaintiff claimed, having been conveyed directly to his wife, Sarah Peterson, the other defendant, by one Clement L. Lee, and the defendants, on the strength of that legal title, had a verdict.

To the tract of two and thirty-hundredths acres, the plaintiff made title under a deed of conveyance from Daniel Lore, Jr., and wife, to William Peterson, bearing date April 22d, 1856, and a deed to the plaintiff from the sheriff of the county of Cumberland, together with the judgment and execution

thereon, whereby the same was sold to the plaintiff, which judgment was signed on the 12th of August, 1869, for the sum of $191.13, in favor of the executors of Ephraim Mulford, deceased, of whom the plaintiff was one.

The defence was made under the paper title which was in Sarah Peterson, the other defendant. To maintain the defence, the defendants offered in evidence a mortgage on the same premises, made by Peterson and wife to one Richard D. Bateman, dated February 9th, 1857, to secure the sum of $273.40, and an assignment thereof by said Bateman to the said Sarah, bearing date on the 7th of February, 1866, and also two deeds of conveyance, each dated June 4th, 1867; the first from the said Peterson and wife to Bateman, and the other from Bateman to the said Sarah.

The assignment of the mortgage was endorsed thereon, and was in writing, but not under seal, and is in the following words: " For a valuable consideration to me in hand paid by Sarah Peterson, I do hereby assign and set over to her the within mortgage, and the property herein described, subject to a certain bond bearing even date herewith. Signed R. D. Bateman."

The defendants also produced in evidence the bond mentioned in the said mortgage, with an assignment thereon to the said Sarah Peterson.

The plaintiff's counsel objected to the admission in evidence of the mortgage and its assignment, but the same were, nevertheless, admitted by the court.

To overcome this title on the part of Sarah Peterson, the plaintiff offered to prove—1st. That the consideration for the assigment of the above stated mortgage was paid by Sarah Peterson with the money of her said husband, and the assignment thereof procured in her own name, with specific intent to defraud the creditors of her husband. 2d. That before and at the time of the execution of said assignment of mortgage, and before and at the time of the execution of said deeds by William Peterson and wife to Richard D. Bateman, and by Richard D. Bateman to said Sarah, the said William

Peterson was indebted to various persons, among whom was the said Ephraim Mulford, a debt to whom of about $300 was then due, for a portion of which debt the above judgment was subsequently obtained by his executors.   3d. That the two last-mentioned deeds were made and executed without consideration, with specific intent to defraud the said Ephraim Mulford and other creditors, of said William Peterson of their just claims.

By consent of the counsel of the respective parties, a formal verdict was taken for the defendant, and the case certified to this court for its advisory opinion.

Argued at February Term, 1871, before the CHIEF JUSTICE, and Justices BEDLE and DEPUE.

For the plaintiff, *L. Lupton* and *F. F. Westcott.*

For the defendants, *Reeves* and *A. Browning.*

DEPUE, J.   The first question certified relates to the competency of the mortgage, and the assignment thereof, as evidence in the cause.

The defendants cannot avail themselves of the title of Bateman under the mortgage, unless they show that the legal estate of the mortgagee was conveyed to them, or one of them. An outstanding mortgage in the hands of a stranger, cannot be set up to defeat the title of the mortgagor or his alience. *Den* v. *Dimon*, 5 *Halst.* 156.

In equity, the assignment of the debt will carry with it the right of the mortgagee in the mortgaged premises.   But in a court of law an assignment of a mortgage is a conveyance of lands, and will not pass the legal estate to the assignee, unless it be made by deed.   *Kinna* v. *Smith*, 2 *Green's C. R.* 14 ; *Den* v. *Dimon, supra ;* 1 *Wash. on R. Prop.* 519.

The assignment was in writing, but not under seal.   It was not contended by the defendants' counsel that it would operate to transfer the legal estate, except by force of the act of March 14th, 1863, (*Nix. Dig.* 613,\*) entitled " An act to make mort-

---

\* *Rev.*, p. 708, § 31; and p. 850, § 19.

gages and other contracts assignable at law." By the first section of this act, all mortgages on property in this state, and all covenants and stipulations therein contained, and all contracts for the sale or conveyance of real estate, and all writings, whether sealed or not, containing any agreement for the payment of money, are made assignable at law, and the assignee may sue thereon in his own name, allowing all just set-offs and other defences against the assignor existing before notice of the assignment, that would have been allowed in any action brought by him. The second section provides that " any assignment authorized by this act shall be in writing, and the execution thereof may be proved or acknowledged as the execution of deeds is or shall be required to be proved, to authorize the same to be recorded ; and when so proved or acknowledged, and a certificate thereof endorsed on or annexed to the same, may be offered in evidence, as if duly proved, and shall be sufficient to pass the right of the assignor, even if a married woman."

It was manifestly the design of this act to provide a method for the transfer of the estate of the mortgagee in the mortgaged premises, so as to enable the assignee to obtain a remedy on the mortgage in courts of law, in his own name. The mortgagee could maintain no suit at law on the mortgage, except the action of ejectment to recover possession of the lands by virtue of his legal title. Unless the legal estate is made by this act to pass under the assignment, the statute will be entirely inoperative with respect to mortgages.

It was argued that the common law rule was not superseded by this legislation, and that, notwithstanding this act, the assignment required a seal. To support this view the case of *Hetfield* v. *Central R. R. Co* , 5 *Dutcher* 571, was relied on. In that case it was held that, under a provision in a charter for obtaining the right to appropriate lands for the purposes of a railroad track by consent of the owner, the consent implied was a legal consent, and could only be obtained in the manner in which title to real estate might be acquired. The

defendants' charter was silent as to the manner of consenting. In the more recent case of *The Raritan Water Power Co.* v. *Veghte*, 6 *C. E. Green* 463, the Court of Appeals held that under an act of incorporation which gave the corporators power to divert the waters of a private stream, upon the written consent and permission of the owners of lands below the place of diversion, a consent in writing, not under seal, was sufficient, though the right thus acquired could not be granted by the common law, except by an instrument under seal. This decision was placed on the ground that the legislature, by the words written consent, prescribed the character of the instrument which should be effectual to vest the right; thus distinguishing between a statute which simply gives capacity to acquire a right in lands, and one which specifically points out the means by which such right shall be acquired.

The rule of construction adopted in the case last cited, is applicable to the statute now under consideration.

The act is purely remedial in its provisions, and should be liberally construed. The construction contended for by the plaintiff's counsel will make the act useless, as, independently of its provision, an assignment under seal of a mortgage would convey the legal estate.

There is another aspect of this question that will legalize the admission of this mortgage and assignment in evidence, and give effect to them independent of the statute, if not objectionable on the ground of fraud upon creditors. The acquisition of the equity of redemption by a mortgagee, will not merge his legal estate as mortgagee so as to prevent his setting up his mortgage to defeat the title of another acquired intermediate the taking of the mortgage and the conveyance to him of the equity of redemption. The mortgage will be kept alive, if such appears to be the intention of the parties and the justice of the case is thereby subserved. *Woodhull* v. *Reid*, 1 *Harr.* 128; *Thompson* v. *Boyd*, 1 *Zab.* 58; *S. C.*, 2 *Zab.* 543; *Duncan* v. *Smith*, 2 *Vroom* 325. In 1866, Bateman assigned the mortgage to Mrs. Peterson. Assuming that the assignment was not sufficient in form to transfer his

legal estate as mortgagee, the legal title remained in him, in trust for Mrs. Bateman. In 1867 Bateman became the owner of the equity of redemption. There was then in Bateman the naked legal title under his mortgage, in trust for the assignee of the mortgage debt, and the equity of redemption —united but not merged. The deed of conveyance which Bateman subsequently made to Mrs. Peterson was sufficient in law to transfer both estates. The assignment which she continued to hold of the bond and mortgage would be evidence of an intention to retain her rights under the mortgage, which would prevent its merger in the equity of redemption, of which she also became the owner by the same deed of conveyance. The way was open to her to make title under the mortgage and the conveyance from Bateman to her, without taking any notice of the deed to him, for the equity of redemption from her husband and herself. Upon the introduction of that deed in evidence, the assignment of the mortgage debt became competent, if not necessary evidence to exclude the conclusion of a merger by the union of the estate of the mortgagee and the equity of redemption in the same person.

The second point certified presents the question whether a deed may be avoided in a court of law, on the ground that it was fraudulently made with intent to defraud the creditors of the grantor. Were it not for the earnestness with which it was contended by the counsel of the defendants that the remedy was exclusively in equity, we would dismiss this part of the case, with a simple affirmation that the question of fraud against creditors is one that is cognizable in courts of law, without regard to the form of the contract of conveyance, or the solemnities with which it was executed. The practice at the circuits has been to admit evidence of fraud against creditors, in actions of ejectment, to overcome title made under fraudulent deeds of conveyance. I am not aware that the question of the competency of such evidence has ever before been questioned in the courts of this state. The investigation of matters of fraud against creditors, is peculiarly

fit to be made before a jury. To exclude the subject matter from the searching process of examination, which may be made before a jury on the hearing of witnesses in open court, would tend greatly to impair the efficiency and usefulness of our judicial system.

Courts of law and courts of equity have concurrent jurisdiction over frauds, under the statute concerning fraudulent conveyances. In cases where the legal title to the property is such that it cannot be seized under execution, resort to equity is necessary—as where the legal title has never been in the debtor, having been conveyed by a third person directly to another, in secret trust for the benefit of the debtor, with a design fraudulently to screen it from his creditors. But where the legal title has been in the debtor, so as to be subject to execution at law, and might be made available for the satisfaction of the debt, if the fraudulent conveyance had not been interposed, the creditor or a third person having taken title under a sheriff's sale, may bring ejectment, and avoid the fraudulent conveyance by proof of the illegal purpose for which it was made.

The statute 13 *Eliz.*, *chap.* 5, makes utterly void, frustrate, and of no effect, every feoffment, gift, grant, alienation, bargain, and conveyance of lands, tenements, goods, and chattels, or any of them, devised and contrived to delay, hinder, or defraud creditors, as against such creditors, any pretence, color, feigned consideration, expressing of use, or any other matter or thing to the contrary. By the 27 *Eliz.*, *chap.* 4, conveyances made to defraud subsequent purchasers, are declared void as to persons defrauded. In both statutes, a penalty is provided for, which parties to such conveyances, or such as are privy to or knowing of such fraud, incur, who shall put in use or maintain, justify or defend, such conveyances as made *bona fide* or upon good consideration.

These statutes have been re-enacted in this state, (*Nix. Dig.* 355.*) Their effect is to make transactions of the character denounced, illegal.

A seal will not conclude a party from showing, in a court

* *Rev.*, *p.* 44.

of law, that an instrument is void which is made upon a consideration, in violation of a statute, or contravening the general policy of the law. The cases sustaining this proposition are collated in the notes to *Collins* v. *Blantern*, 1 *Smith's Lead. Cas.* 618, *et seq.* The recital of a money consideration in the deed, does not conclude an inquiry into the true consideration, for the purpose of showing that the transaction on which it is founded is illegal. *Den* v. *Shotwell*, 3 *Zab.* 465 ; *S. C.*, 4 *Zab.* 789. Usury is a defence at law in an action on a money bond. *Executors of Shotwell* v. *Dennis*, 2 *Green* 501. In ejectment to recover a tract of land, evidence is competent to show that the deed was made in pursuance of a distribution by lot, in violation of the act concerning lotteries. *Den* v. *Shotwell*, 3 *Zab.* 465 ; *S. C.*, 4 *Zab.* 789. A covenant to secure the payment of money for the leasing or conveyance of lands, in violation of a statute, may be avoided at law by proof of the illegal transaction. *Gas Light Co.* v. *Twiner*, 5 *Bing. N. C.* 666 ; *Fisher* v. *Bridges*, 3 *E. & B.* 642. A deed by a debtor, conveying, substantially, the whole of his property to one creditor, may be shown to be fraudulent by the assignees in bankruptcy of the debtor, in an action of trover. *Graham* v. *Chapman*, 12 *C. B.* 85. "Always and everywhere, an assignment for the benefit of creditors is void, if it be fraudulent." 3 *Parsons on Contracts* 448.

A covinous conveyance of land is no conveyance as against the interest intended to be defrauded, and ought, by the rules of good pleading, so to be treated where a party is seeking to avail himself of the statutes of fraudulent conveyances. *Roberts on Frauds* 596 ; *Gooch's case*, 5 *Rep.* 60. That the defence may be made at law, without regard to the form of the instrument of conveyance, or the fact that it is under seal, is practically shown by a great number and variety of cases. A citation of a few is all that is necessary. *Gooch's case*, 5 *Rep.* 60 ; *Burrel's case*, 6 *Rep.* 72 ; *Leonard* v. *Bacon, Cro. Eliz.* 234; *Apharry* v. *Bodingham, Cro. Eliz.* 350 ; *Nunn* v. *Wilsmore*, 8 *T. R.* 521 ; *Doe* v. *Manning*, 9 *East* 59 ; *Chapman* v. *Emery, Cowper* 278 ; *Doe* v. *Roe*, 4 *Bing. N. C.* 737 ;

*Gale* v. *Williamson*, 8 *M. & W.* 405; *Hindes' Lessees* v. *Longworth*, 11 *Wheat.* 199; *Jackson* v. *Myers*, 18 *J. R.* 425; *Jackson* v. *Seward*, 5 *Cow.* 67; *Jackson* v. *Mather*, 7 *Cow.* 301; *Chautauque County Bank* v. *Risley*, 19 *N. Y.* 370.

Where one takes a deed of another's farm to defraud the grantor's creditors, and afterwards, in pursuance of the same fraudulent arrangement, procures the assignment of an outstanding valid mortgage on the same farm, with the grantor's money, neither the deed nor the mortgage will be available as a defence to an ejectment, by one deriving title under a judgment and execution against the grantor. *Stephens* v. *Sinclair*, 1 *Hill* 143. A mortgage paid off with the money of the mortgagor is extinguished. *Shepherd* v. *McClain*, 3 *C. E. Green* 128.

The principles above stated have long been regarded as settled law in this state. In *Den* v. *DeHart*, 1 *Halst.* 450, which was an action of ejectment, a defence that the deed, under which the plaintiff claimed, was a voluntary conveyance, and therefore fraudulent and void as against creditors, was successfully made by a defendant, who made title under a judgment and execution against the grantor.

A purchaser at a sheriff's sale is not considered as a subsequent purchaser under the third section of the act for the prevention of frauds and perjuries, (*Nix. Dig.* 356,) but is considered as a creditor under the second section, and stands in the place of the creditor upon whose judgment the land was sold, and as such may avoid a deed fraudulently made by the debtor for the purpose of defrauding creditors, in an action of ejectment, by proof of the fraud. *Lessee of Ridgeway* v. *Underwood*, 4 *Wash. C. C. R.* 129. If the deed thus attacked expresses a money consideration, it may, nevertheless, be declared fraudulent, by proof of such facts *aliunde* as will warrant a jury, or the court, in finding fraud. *Lessee of Ridgeway* v. *Ogden*, 4 *Wash. C. C. R.* 139.

It was insisted that the law had been declared otherwise in the more recent cases of *Rogers* v. *Colt*, 2 *Zab.* 18, 704; and *Stryker* v. *Vanderbilt*, 1 *Dutcher* 482. In neither of these

cases was the question of fraud against creditors involved. The actions were *inter partes* to the original contracts. The defence was excluded upon the ground that a specialty cannot be avoided in a court of law for a mere defect in the consideration, but it was not intended, in either of these cases, to impugn the doctrine equally well settled, that a specialty is invalidated everywhere by illegality in the consideration, which makes it void from the beginning. In *Stryker* v. *Vanderbilt,* Chief Justice Green thus guardedly expresses himself: " Where the contract is *in itself legal,* the amount or value of consideration cannot be inquired into in a court of law."

In the more recent case of *Owen* v. *Arvis,* 2 *Dutcher* 22, a bill of sale, under seal, was declared fraudulent and void as against creditors in an action of trespass for taking goods and chattels included in it.   *Garretson* v. *Kane,* 3 *Dutcher* 209. In the case just cited, the authority of *Stryker* v. *Vanderbilt* was recognized, and Mr. Justice Elmer, in his opinion, carefully distinguishes the principle upon which that case was decided from that which is now under consideration. His language is: " If the offer of the defendant's counsel of evidence which was overruled, or any of the evidence before the court, fairly raised the issue whether the bill of sale was intended to hinder, delay, or defraud the creditors of Terhune, or was, in contemplation of law, such a transfer as had that effect, then it is clear that the fact that the instrument which effected it was under seal, did not interpose any difficulty in the way of inquiring into the consideration of law, as well as in a court of equity. The books of reports are full of cases to this effect."

The reason in which the exclusion of evidence of fraud in the consideration of a sealed instrument, in an action between the parties, is founded, grows out of the estoppel which arises from the seal. A creditor or a purchaser at a sheriff's sale, by virtue of an execution on the judgment of the creditor for his debt, is not a party or privy to the subsequent and fraudulent conveyance, and is not within the operation of such

estoppel.   He claimed against, and not under, the illegal conveyance.

The Circuit Court is advised that the assignment of the mortgage was sufficient to vest in Sarah Peterson the legal title of the mortgagee to the premises, and that the evidence offered to impeach the defendants' title was competent, and that if the propositions contained in the case stated are established by proof, the plaintiff is entitled to recover the lot containing the two and thirty-hundredths acres.

The CHIEF JUSTICE and Justice BEDLE concurred.

*CITED *in* Lamb v. Cannon, 9 Vr. 365; Parker v. Child, 10 C. E. Gr. 43; Hoppock's Ex'rs v. Ramsey, 1 Stew. 417.