WILLIAMS *against* MOREHOUSE and another.

*A.* having a demand against *B.,* for money received by *B.* to *A.*'s use, executed a deed of assignment of such demand to *C.,* in trust, to pay, in the first place, the expenses of executing the trust, then a specific debt to *C.* in full, then to apply the balance in payment of all the other debts of *A.,* and the residue, if any, to be paid as *A.* should direct. After *A.*'s death, *B.* was appointed his administrator, who accepted the trust, but neglected to inventory or account for the demand so assigned to *C.* The estate was represented, and, according to the report of the commissioners, was, insolvent. In an action on the probate bond, assigning such neglect of *B.* as a breach, which was admitted, it was held to be the duty of *B.* to inventory, if not the entire debt due from him to *A.,* at least the residuary interest of *A.* under the assignment, of which *B.* had notice, and which was assets in his hands, either for the payment of debts, or for the purposes of distribution ; and therefore, the plaintiff was entitled to recover.

THIS was an action brought on the penal part of a bond, given to the plaintiff, as judge of the court of probate, for the faithful performance of the duty of administrator on the estate of *Herman Couch,* deceased, by *John Morehouse,* one of the defendants.

The defendants having prayed oyer of the bond and condition, the latter being in the form prescribed by statute, and having set them forth, pleaded performance generally.

The plaintiff replied, and assigned a breach, consisting in the refusal and neglect of the administrator to inventory, or in any manner to account for, a debt due from him to the intestate, in his life-time, and at his decease. This debt is stated in the replication in a great variety of forms ; and the breach is as variously alleged ; but it appears, that there was only a single demand, arising out of a single transaction, *viz.* the sale of a tract of land at *Martha's Vineyard,* in *Massachu-*

*setts*, owned by *Couch*, the intestate, which he had con- veyed to *Morehouse* in trust, and which *Morehouse* had sold for *Couch's* benefit. This demand *Couch* assigned to *Perry Smith*, Esq., by a deed of assignment, dated the 7th of *January*, 1828. The deed, after specifying the demand and the source from which it accrued, and assigning the same, (with some other claims and property,) to *Smith*, proceeds as follows: "Giving the said *Smith* full power and lawful authority, in my name or otherwise, to collect the said claims, and convert the said property into cash, and to apply the same, in the first place, to pay and satisfy all after charges and expenses incurred in executing the trust of this deed, and to pay him a reasonable compensation for his services, and then to apply and pay the balance in satisfaction of the note hereunto subjoined, [*Couch's* note to *Smith* for 60 dollars, 53 cents, with interest,] being given for a debt due to said *Smith*, upon a judgment recovered in favour of *Samuel Eustice* against me, the said *Couch*; and also to pay to said *Smith* the expenses which he has been obliged to incur in enforcing the said judgment, and which I deem it just and right for me to pay, to the amount of ten dollars; and then to apply the balance in payment of other debts which I owe, in just and equal proportions; and the residue, if any, to pay as I shall direct."

The defendants rejoined to the replication, by a general denial of the matters alleged therein, except the deed of assignment from *Couch* to *Smith*, which was admitted; on which issue was joined.

The cause was tried, on this issue, at *Litchfield, August* term, 1832, before *Bissell*, J.

The plaintiff adduced evidence to prove the indebtedness of *Morehouse* to *Couch*, accruing in the manner above stated; and it was admitted, that this debt was included in *Couch's* deed of assignment to *Smith*; and that the deed was, at *Couch's* death, and is still, outstanding in the hands of *Smith*. The plaintiff also claimed to have proved, that the estate of *Couch* being represented insolvent, commissioners were appointed, who made a report of debts due from the estate, amounting to 406 dollars, 58 cents; whereof 22 dollars, 43 cents, were last sickness expenses, and of the residue, only 153 dollars, 32 cents, existed at the execution of the deed,

*Litchfield,*
*June, 1833.*

Williams
*v.*
Morehouse.

the balance having accrued subsequently ; that *Smith* pre-sented his note against *Couch* for 60 dollars, 53 cents, to the commissioners, and had it allowed ; and that, at *Couch's* death, his residuary interest in the claim against *Morehouse,* as provided for in the last clause of the deed, was, and now is, of great value, and more than sufficient to pay all the debts against his estate.

It was admitted, that neither the debt assigned nor the residuary interest, had been inventoried, by *Morehouse;* and that the property belonging to the estate, as inventoried, amounted to only 53 dollars, 3 cents.

The plaintiff requested the judge to charge the jury, that if they should find, that said debt existed, as claimed by the plaintiff, it was the duty of *Morehouse* to inventory it ; and at any rate, if they should find, that the residuary interest was of value, it was his duty to inventory *that.*

The judge instructed the jury, that the legal effect of the deed of assignment was such, that there was no debt due from *Morehouse* to *Couch*, at the time of his decease, either in law or equity, of which the administrator could have knowledge, and which he was bound to inventory ; and therefore, as the neglect to inventory this debt, was the only breach complained of, their verdict must be for the defendants.

The jury returned a verdict for the defendants accordingly ; and the plaintiff moved for a new trial for a misdirection.

*T. Smith* and *L. Church*, in support of the motion.

*Bacon* and *J. W. Huntington*, contra.

BISSELL, J. The case turns entirely upon the effect of the assignment. On the part of the defendants, it has been contended, that its legal effect was, to vest all *Couch's* interest [in, and title to, this demand, in *Smith*, the assignee : that upon the delivery of the deed, *Morehouse* ceased to be the debtor of *Couch*, and became the debtor of *Smith :* that this was an assignment coupled with an interest ; and, therefore, not revoked, by the death of *Couch :* that inasmuch as the trusts created by the deed remained unexecuted, it could not be known, that there was, or would be, any residuary interest, in favour of the estate ; and of course, there was nothing, of which the

administrator could take notice, or which he was bound to *Litchfield,* inventory ; that admitting there was a residuary interest, June, 1833. *Smith* was the debtor to the amount of such interest ; and, Williams therefore, the defendants could not be subjected, under the *v.* Morehouse. breach assigned.

I yielded my assent to these claims of the defendants, on the trial of the cause below ; and, accordingly, instructed the jury, that the legal effect of the deed of assignment was such, that there was no debt due as claimed, from *John Morehouse* to *Couch*, at the time of his decease, either in law or equity, of which he, *Morehouse*, could have knowledge, and which he was bound to inventory ; and, therefore, as his not inventory-ing *this debt*, was the only breach assigned, their verdict must be for the defendants.

I have reason to be satisfied, that I then took a mistaken view of the case, and that the charge to the jury is incorrect.

It may here be remarked, that the assignment to *Smith*, was made to him *in trust*—in the first place, to pay and sat-isfy all the charges and expenses incurred in executing the trust, together with a reasonable compensation to him for his services ; then to pay a single specified debt, amounting to about 70 dollars, in full ; then to apply the balance in pay-ment of all the other debts of *Couch*, in equal proportions ; and the residue, if any, to be paid as he should direct.

The replication, after adverting to the assignment, and the trusts aforesaid, *avers*, that *Smith* has never executed the trust ; the appointment of one of the defendants as administra-tor on the estate of *Couch*, having prevented and defeated the execution thereof ; that admitting said trusts to be executed, there is a residuary interest, of the value of 3000 dollars, be-longing to said estate ; and that the debts due therefrom, amounting to 406 dollars, 58 cents, and interest thereon from the 16th day of *December*, 1830, remain wholly due and un-satisfied.

Upon the trial of the cause, evidence was offered to prove, in addition to the facts above stated, that *Smith* had never act-ed under the deed ; that the estate of *Couch* was represented insolvent, and that commissioners were duly appointed ; that the specific debt mentioned in the assignment, was exhibited to, and allowed by them ; that all the debts allowed by them, amounted to the sum of 406 dollars, 58 cents, before stated ;

*Litchfield,*
June, 1833.

Williams
*v.*
Morehouse.

and that the property belonging to said estate, *as inventoried,* amounted only to the sum of 53 dollars, 3 cents.

Upon this state of facts, the question arises, whether the administrator was bound to inventory, or to embrace in his administration account, the demand now under consideration ?

It is, undoubtedly, the intent of the law, that *all the estate* of a person deceased, shall be represented to, and passed upon by, the court of probate ; and especially, is this true, when the estate is insolvent. The provisions of the various statutes on the subject, all proceed upon this idea. It is made the duty of the administrator, well and truly to administer all the *goods, chattels, credits and estate* of the deceased, which may come to his knowledge. These terms are exceedingly broad, and comprise within their meaning every possible species of property.

Was there, then, *any property,* of which this administrator had knowledge, and which he ought to have placed upon the records of the court of probate ?

It is, perhaps, unnecessary to decide, whether he was bound to inventory his entire debt to *Couch,* without any regard to the assignment ; although it is very clear, that he might have done so, with entire safety to himself. Had he inventoried this debt, and applied it, as he might, and ought to have done, in satisfying the debts due from the estate which he represented, so far he would have accomplished that, which it was the great object of the assignment to accomplish ; and the trusts created by that deed, would have been entirely superseded. The debt would have been rightfully paid ; and as to any surplus, if it had been already in the hands of *Smith,* the administrator, as the representative of *Couch,* would have had a right to direct the payment of it to himself.

*Smith,* it should be remembered, had no *legal* claim upon this defendant, being the assignee of a mere *chose in action.* His only relief would have been in chancery. And what possible ground could there be for the interference of a court of chancery, when the trust created by the deed, had been already discharged ; and when the only object in drawing money from the hands of the administrator, would be to place it there again ?

He might, therefore, have inventoried this debt, and have

applied the moneys due upon it, in a regular course of administration, without the slightest danger or hazard to himself. I am by no means satisfied, that it was not his duty to do so; and especially, as for aught that appears, *Smith* had never acted under the assignment; and so far from manifesting any intention of doing so, had proved his own debt under the commission; and the more especially, as this course was directly calculated to bring the settlement of the estate to a speedy close, and to do entire justice to all parties in interest.

*Litchfield, June, 1833.*

Williams *v.* Morehouse.

But whatever might have been his duty, in regard to the entire debt, it is very clear, upon the facts stated, that there was a residuary interest, of which he had notice, and which was assets in his hands, either for the payment of debts, or for the purposes of distribution.

Why should not that interest, be it what it might ,have been embraced in the inventory, or in some other way accounted for? It was already in his own hands; and, as has been before remarked, there could be no pretence for calling it out, under this deed of assignment. The deed itself would have protected him, with respect to the surplus. There is, therefore, no pretence for saying, that he could not, safely, have adopted this course. And as little is there for claiming, that he had not knowledge of every fact necessary to be known, in order to devolve the obligation upon him. He knew the amount of his own debt to the intestate. He knew, he must have known, of the deed of assignment, and its provisions. His was the only debt assigned; and notice to him, if not indispensable to the validity, was necessary to the protection of the assignment. He knew that no step had been taken under the deed. None could have been taken, without his knowledge. He knew the amount of debts against the estate. The report of commissioners had settled *that*. He knew that he had funds, in his hands, sufficient to pay them all, and which he might safely apply to that object. And yet, with a full knowledge of all these facts, he renders no account of his own debt; pays the assignee nothing; represents the estate insolvent; exhibits an inventory amounting only to 53 dollars; leaves the debts wholly unpaid; and now seeks to protect himself under this out-standing deed of assignment, and to set the creditors at defiance. This defence has, on the face of it, an unfavourable aspect. It is strictly technical, and opposed

to the justice of the case. I believe it may be broken down, without doing violence to any principle of law. I believe here was a debt, the precise amount of which, might have been easily ascertained ; and which it was the duty of this administrator to have placed, in some form, upon the records of the court of probate, and to have administered according to law. I therefore think the charge was incorrect ; and the rule to shew cause must be made absolute.

The other Judges were of the same opinion ; PETERS, J. doubting, whether the interest in question, was such estate as the law requires to be inventoried, but concurring in the result, as in accordance with the justice of the case.

New trial to be granted.