EDWARD ALMY ROBERTSON et al., Appellants, *v.* LEWIS A. SAYRE, Respondent.

R., who was financially embarrassed, with intent to hinder and delay his creditors, purchased and paid for certain premises taking a deed therefor in the name of M., without the consent or knowledge of the latter, which deed was recorded. R. died intestate, M. conveyed the premises to defendant without consideration except an oral agreement on his part in case any of the heirs of R., whose whereabouts were unknown to M., should turn up in distress that he (defendant) should help them to the extent of one or two hundred dollars. Neither M., R. nor the heirs of the latter ever had possession or exercised acts of ownership over the premises. In an action brought by said heirs, *held*, that R. had no legal estate in the premises which descended to plaintiffs; that the agreement between M. and defendant did not create a legal or equitable interest in the lots in favor of the plaintiffs or raise a liability which they could enforce in this action.

Reported below, 53 Hun, 490.

(Argued May 5, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 9, 1889, which affirmed a judgment in favor of defendant, entered upon the report of a referee.

In January, 1841, David H. Robertson purchased, in the name of Thomas H. H. Messenger, at a mortgage foreclosure sale, two lots in Harlem for fifty dollars. January 18, 1841, the master in chancery conveyed the premises to Messenger by a deed which was recorded January 19, 1841. Robertson made the purchase, took the deed, procured it to be recorded and paid the consideration, fifty dollars, without the knowledge or authority of the grantee. Before the transaction, Robertson and Messenger had been friends, but no business relations had existed between them. Shortly after the deed was recorded Robertson informed Messenger of the transaction who was greatly offended and their previous friendly relations were severed, and so continued until the death of Robertson, which occurred May 2, 1851. The referee found that at the time of the purchase Robertson was financially

embarrassed, and that the purchase was made and the deed taken in the name of Messenger for the purpose of hindering and delaying the creditors of Robertson. Neither Robertson nor Messenger took possession of said lots, nor did either pay the taxes thereon or exercise any acts of ownership, and that the plaintiffs, who are the heirs at law of Robertson, have never been in possession of the premises or exercised acts of ownership over them. November 25, 1881, Messenger conveyed the two lots to the defendant by a quit claim deed which was duly recorded July 14, 1883. Messenger had forgotten the fact that these lots had been conveyed to him, but on being reminded of it said, that he supposed he had no valuable interest in them because he supposed they had been eaten up by, and sold for taxes during the period of forty years. The defendant represented to Messenger that he had some interest in the property, but what representation was made or whether it was true or false, was not found by the referee and none of the evidence is contained in the record before the court.

The referee found that Messenger knew that David H. Robertson was dead and that he left children who were living, but did not know where they resided, and that he conveyed the lots to the defendant upon his oral agreement that if any of the Robertson heirs should turn up in distress, that defendant should help them to the extent of one or two hundred dollars. It was further found that Messenger would have conveyed the premises to the heirs of Robertson upon request, and that at the time they were conveyed to the defendant that they were worth about $10,000, but that their value was unknown to Messenger. Since the lots were conveyed to the defendant he has redeemed them from the tax sales and has paid considerable sums, the amount not appearing, in discharge of the taxes in arrear. The plaintiffs seek an accounting and that the defendant be compelled to pay to the plaintiffs the value of the lots, less such sums as the defendant may have expended in the payment of taxes and improvements.

*V. Van Dyck* for appellants.

*B. D. Penfield* for respondent.

FOLLETT, Ch. J.    The learned counsel for the plaintiffs insists in his first point that title to the lots was never vested in Messenger, because he says a valid delivery of the deed and an acceptance of it by him were not proved.   The plaintiffs are not in a position to raise this question, for they alleged in the fourth division of their complaint that the legal title to the lots in question was in Messenger until he conveyed them to the defendant.   This allegation was not controverted by the answer.   It was not found as a fact nor as a conclusion of law that there was not a valid delivery of the deed from the master in chancery to Messenger, nor was the referee requested by either party to so find or hold.   But if this position could be maintained it would not aid the plaintiffs, for the result would be that the title of the owner of the fee when the mortgage was foreclosed was not divested by the master's deed, and both the plaintiffs and defendant would be without title to the lots.

David H. Robertson having procured these lots to be conveyed to Messenger for the purpose of defrauding his creditors, had no legal estate in them which could be reached by execution (*Garfield* v. *Hatmaker*, 15 N. Y. 475), or which on his death descended to his heirs.   (*Moseley* v. *Moseley*, 15 id. 334; Wait on Fraud. Convey. § 121.   See also 1 R. S. 728, §§ 50, 51, 52; *Underwood* v. *Sutcliffe*, 77 N. Y. 58; *Brewster* v. *Power*, 10 Paige, 562; *Bates* v. *Lidgerwood Mfg. Co.*, 50 Hun, 420; *Hamilton* v. *Cone*, 99 Mass. 478.)   This rule is a penalty imposed by the law for the prevention of frauds and for the protection of subsequent purchasers (Reviser's notes to sections cited), and the reason for its application is not weakened in case the grantee, as in the case at bar, was not a participant in the fraud.

It is clear that neither Robertson in his life-time, nor his heirs since his death, could have recovered the lands or its

proceeds from Messenger, or from his grantee by any legal or equitable remedy. (See the authorities above cited.) It is alleged in the complaint that David H. Robertson was the owner of the mortgage which was foreclosed, but no such fact was found. On the contrary, the facts found compel the inference that he had no interest in the mortgage nor in the land covered by it.

Proceeding on the assumption that the deed to Messenger vested the legal title in him, did the agreement which the learned referee found was made between the defendant and Messenger create a legal or equitable interest in the lots in favor of the plaintiffs, or did it raise a liability on the part of the defendant in favor of the plaintiffs which can be enforced in this action? The referee finds, " he (Messenger) was told by defendant that they (the lots) had been sold for taxes but could be redeemed; he (Messenger) then knew that David H. Robertson and his oldest son and daughter were dead, and that the other children were scattered, but living at places unknown to him; and after some conversation touching a supposed interest of defendant in the lots (and which is referred to in the deed), he said to defendant, " I will tell you what I will do; if any of Mr. Robertson's heirs should turn up in distress, I will transfer this property to you, providing you will help them," to which defendant said, " Agreed; I will do so," and when asked the amount, said Messenger named one or two hundred dollars, that being about the value of the lots when they came to his hands.

On that occasion a quit-claim deed was made and executed by Messenger to the defendant granting all his right, title and interest in the lots, under which deed defendant holds the same, for which no actual consideration was paid, but the sole consideration was the promise herein above stated.

This action was not brought to enforce the agreement, nor do the findings show the existence of facts creating a liability under it. There is no finding or request to find that the defendant procured the conveyance to be made by the false representations of himself or of his attorney. We think the

facts found do not establish any liability on the part of the defendant to the plaintiffs which can be enforced in this action. As before remarked, the evidence given on the trial is not contained in the record, and so this court has no means of ascertaining the merits of the controversy except as disclosed by the decision of the referee. For some reason, which we must assume was justified by the evidence, the learned referee refused to allow the defendant costs, and no costs were allowed him at General Term. Following the views of the courts below upon the question of costs, the defendant will be denied them in this court.

The judgment should be affirmed, without costs.

All concur.

Judgment affirmed.