FRANK J. FINNEGAN, ADMINISTRATOR (ESTATE OF
EMMA L. LAFONTAINE) *vs.* WILLIAM
LAFONTAINE ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

562

Argued February 3d—decided April 7th, 1937

*Cramer C. Hegeman* and *Robert H. Gould,* for the appellant (named defendant).

*William F. Tammany,* for the appellee (plaintiff).

MALTBIE, C. J.   The substance of the complaint, brought by the plaintiff as administrator of the estate of Emma L. LaFontaine, was that on October 16th, 1935, she came into possession of two hundred shares of the stock of the Yale & Towne Manufacturing Company; that the stock was turned over to the defendant LaFontaine, her husband, to whom we shall hereafter refer as the defendant, to serve as collateral for a loan to be obtained for the purpose of paying certain of Mrs. LaFontaine's debts; that the stock was taken in the defendant's name and was pledged as collateral for a bank loan of $4000, which is represented by a note signed by him; and that the defendant secured the stock in his own name through a mistake or by fraud.   The prayer was only for equitable relief to protect the interest of the estate in the stock. The case was claimed for and tried to the jury.   The trial court submitted the case to them upon a single interrogatory, whether Mrs. LaFontaine gave the stock to her husband, and they answered in the negative. The court accepted the verdict and subsequently without the jury heard further evidence and ultimately gave judgment for the plaintiff.   The defendant, appealing, has filed numerous assignments of error. These for the most part do not comply with our rules, some being too general to merit attention and others being very far from that specific assignment which our practice requires.   Practice Book, § 345.   We shall, however, consider the substantial errors claimed.

One of the claims is that the issue which the trial court submitted to the jury was not within the scope of the pleadings and was an insufficient basis upon which to render the judgment. The complaint is rather inartificially drawn, but its allegations make it fairly apparent that the plaintiff was relying upon the fact that Mrs. LaFontaine was the owner of certain shares of stock which had been transferred into the name of the defendant, and the relief sought was such as would serve to secure for the estate the value there might be in that stock over and above the claim of the bank which held it as collateral for the loan. In order to secure that relief it was not necessary that the plaintiff prove the allegation of the complaint that the defendant secured the transfer of the stock to himself by fraud or mistake; unless in some way the right to the stock had been transferred to the defendant by Mrs. LaFontaine the plaintiff was entitled to it or to any value it might have above the claim of the bank. The defendant filed a general denial. Under that pleading he might prove that the stock was given to him by her. *McCarthy* v. *Tierney,* 116 Conn. 593, 596, 165 Atl. 805; Practice Book, § 104. An examination of the record discloses that the plaintiff made no claim that the transaction was secured by fraud or mistake. On the other hand, the defendant made a number of requests to charge which would be appropriate only to a claim that the stock had been given to him. Indeed, he did not claim that the transfer was for a valuable consideration, and the facts suggest no other basis upon which he could rest his title than that of a gift.

Moreover, the defendant caused to be incorporated in the record a transcript of the proceedings at the trial to the jury and to test his claim we may consult it. Generally rulings made in the course of the trial

are to be determined upon the basis of the finding alone and we cannot supplement that finding by recourse to evidence printed to secure corrections in it or to review a ruling upon a motion to set a verdict aside; when, however, an appellant fails to cause to be included in the finding matter which is relevant to a claim of error he makes and that matter appears in the transcript of evidence he has brought before us and asked us to examine, "we must in common fairness be at liberty to use information thus acquired in supplementing a manifestly incomplete finding." *Friedler* v. *Hekeler,* 96 Conn. 29, 34, 112 Atl. 651. From the transcript it appears that early in the trial the court asked counsel if the case did not get down to the narrow issue whether there had been a loan or a gift to the defendant; counsel for the plaintiff answered "Yes" and counsel for the defendant answered "It seems so to us." In view of these statements the trial court was justified in regarding that as the sole issue upon this phase of the case. It was within the fair scope of the pleadings and if the defendant desired to claim a variance he should have done so at the trial. *Weiner* v. *Loew's Enterprises, Inc.,* 120 Conn. 581, 584, 181 Atl. 921.

The defendant asked the court to submit to the jury a number of interrogatories in addition to the one which it did submit. In an equitable action tried to the jury it is peculiarly within the discretion of the court to submit such interrogatories as it deems will be helpful in the making of the ultimate decision. *Kornblau* v. *McDermant,* 90 Conn. 624, 638, 98 Atl. 587. With one exception the interrogatories which the defendant sought to have submitted to the jury concerned subordinate facts which would not be controlling in determining the ultimate question whether or not there had been a gift of the stock to the de-

fendant, and the trial court might properly refuse to submit them. *Callahan* v. *Jursek*, 100 Conn. 490, 494, 124 Atl. 31; *Ford* v. *Dubiskie & Co., Inc.*, 105 Conn. 572, 583, 136 Atl. 569; *Miller* v. *Connecticut Co.*, 112 Conn. 476, 481, 152 Atl. 879.

The interrogatory which falls within a different category was one which asked whether Mrs. LaFontaine arranged to have her stock transferred to the defendant in order to place it beyond the reach of her creditors and the risk of their attaching it. It appears in the finding that when in the course of the trial evidence was offered as to the insolvency of the estate of Mrs. LaFontaine the trial court excluded it, as it considered that in the interest of clarity and to avoid confusion in the minds of the jury a single inquiry would best serve the end of fairness to the litigants, the court stating that if it later appeared necessary to go into that, or any other issue, it would hear such evidence without the jury. It did, after the acceptance of the verdict, hear evidence with reference to the ability of the estate to pay the claims presented and upon the question whether or not the stock was transferred by Mrs. LaFontaine to put it beyond the reach of her creditors.

In so doing, the court was undoubtedly seeking to apply what we recently said as to the function of interrogatories in an equitable action tried to the jury: "Where, in an equitable proceeding, a trial by jury is had, a general verdict usually will not serve the purpose intended, which is to inform the court as to facts upon which relief, if any, is to be granted. The proper course in most instances is to submit interrogatories covering only those issues upon which the court determines in its discretion the decision of the jury is appropriate and useful. If the answers of the jury are returned and accepted, the court determines any other

issues necessary to a decision of the case and gives judgment accordingly." *Dzubin* v. *Dzubin,* 121 Conn. 646, 649, 186 Atl. 652. In such an action the court has a discretion to determine what issues shall be submitted to the jury, deciding the other issues in the case itself. General Statutes, § 5625; Practice Book, § 153. When, however, a general claim for a jury trial of an equitable action is granted, unless the court shall later modify the order, the better practice would be to submit to the jury all such issues of fact as it may properly try. *Gest* v. *Gest,* 117 Conn. 289, 295, 167 Atl. 909. However, even if the court erred in not submitting to the jury the question whether the stock was transferred to the defendant to put it beyond the reach of Mrs. LaFontaine's creditors, that error would be immaterial in this case.

An executor or administrator has quite generally been held to be little if anything more than the representative of the deceased, into whose shoes he steps for the distribution of his property, with the same rights and liabilities as the deceased would have had if living. Consequently many courts have denied that he had any standing to set aside a fraudulent conveyance even in behalf of creditors of the estate, although this position has frequently been changed by statute. Notes, 50 L. R. A. (N. S.) 320, 18 Anno. Cas. 37, 36 Anno. Cas. 212, 91 A. L. R. 133. In this State we regard an executor or administrator as a fiduciary representing the rights of the heirs and distributees and also those of creditors. *Robbins* v. *Coffing,* 52 Conn. 118, 144, *Hewitt* v. *Sanborn,* 103 Conn. 352, 378, 130 Atl. 472; *Reiley* v. *Healey,* 122 Conn. 64, 71, 187 Atl. 661. It is our law, in the absence of any statutory provision, that an executor or administrator so far represents creditors that it is his duty to inventory property conveyed by the decedent

in fraud of them when that property is needed for the payment of debts and to institute all necessary proceedings to appropriate it to that use; nor need he wait until the debts of the estate have been determined before taking action to secure it; if, having reduced it to possession, it ultimately proves unnecessary to use it all, if the persons from whom it was secured are entitled to the balance, it must be returned to them. *Minor* v. *Mead,* 3 Conn. 289; *Freeman* v. *Burnham,* 36 Conn. 469; *Bassett* v. *McKenna,* 52 Conn. 437; *Sanford* v. *DeForest,* 85 Conn. 694, 699, 84 Atl. 111. In this case, however, the trial court, though hearing evidence as to the insolvency of the estate, has made no finding that the stock in question would be needed to pay any claims against it, and we cannot upon the authority of these cases sustain its holding that the administrator had a right to recover.

Apart from the question whether an executor or administrator can have set aside a conveyance made by the deceased in behalf of his creditors, there are frequent general statements in books and many decisions which hold that he cannot have such a conveyance set aside merely in the interest of heirs and distributees. See notes cited, supra. In almost all the cases in which this conclusion is reached, the deceased had made a conveyance by way of gift or transfer upon a valuable consideration which was sufficient to pass both the legal and beneficial interest in the property. Such a conveyance is good between parties to it, passes title to the transferee, and leaves no interest in the property which can pass upon the death of the transferor to his heirs or distributees. *Sanford* v. *DeForest,* 85 Conn. 694, 698, 84 Atl. 111. The executor or administrator has, therefore, no right in their behalf to attack the conveyance. The case before us presents a very different situation. The defendant

does not claim that the stock was transferred to him for a valuable consideration and the verdict of the jury, amply supported by the evidence, has found that it was not given to him. The case reduces itself, then, to one where the stock was put into his name without any intent to vest in him any beneficial interest but, if the claim of the defendant is correct, simply for the purpose of avoiding possible attachment by creditors.

We have not found many cases dealing with this precise situation, but those that have come to our attention hold that an executor or administrator has no right in such a situation to secure the property so transferred for the benefit of heirs or distributees; *Robertson* v. *Sayre,* 134 N. Y. 97, 99, 31 N. E. 250; *Chester County Trust Co.* v. *Pugh,* 241 Pa. St. 124, 127, 88 Atl. 319; *Lieb* v. *Griffin* (N. J.) 147 Atl. 634; *Stierlin* v. *Teschemacher,* 333 Mo. 1208, 64 S. W. (2d) 647, 91 A. L. R. 121; *Goodman-Buckley Trust Co.* v. *Poulos,* 124 Neb. 697, 248 N. W. 64; and see *Howe* v. *Bishop,* 44 Mass. (3 Metc.) 26; and this was apparently the law of Arkansas until changed by statute. *Ives* v. *Ives,* 177 Ark. 1060, 1062, 9 S. W. (2d) 1062. These decisions are based upon two grounds. One, stated by the New York court, is that, in such a case the deceased had no title which could be reached by execution or which could descend to his heirs. Apart from the motive which inspired the transfer, such a conveyance would leave in the deceased the beneficial title to the property which would descend to his heirs, and we do not understand how the motive of the transfer could change that situation; nor does the view of the New York court accord with our law; for we regard a transfer of this kind as so far void that any creditor has the right in disregard of it to take the property by attachment and execution as still belong-

ing to the transferor. *Wadsworth* v. *Marsh,* 9 Conn. 481, 485; *Greenthal* v. *Lincoln, Seyms & Co.,* 67 Conn. 372, 378, 35 Atl. 266; *Winchester* v. *Moriarty,* 84 Conn. 678, 682, 81 Atl. 965.

The other reason, stated in the Missouri decision, is that the heirs or distributees cannot make the turpitude of their ancestors the foundation of a cause of action claimed by succession as his heirs. That statement, however, hardly bears analysis. In such a situation the executor or administrator is not making the turpitude of the deceased the foundation of his action; that foundation is that the deceased at his death was the beneficial owner of property the bare legal title to which was in another. The only reason the deceased could not have asserted title to it, was that he would not come into court with clean hands. *Gest* v. *Gest,* 117 Conn. 289, 167 Atl. 989. The question really is, should the turpitude of the deceased be visited upon his heirs and distributees; because equity will not listen to him on account of his own evil doings, will it shut its doors also to those who, presumably, had no part in that evil, and so refuse to them their substantial rights? The defendant has no right to hold the property and to us there seems no reason why persons whose hands are clean should be precluded from claiming it merely because their ancestor soiled his own hands in the transaction. To hold that they cannot assert a right to the property, would make the principle invoked an instrument of injustice, which should not be done. *Miller & Lux* v. *Enterprise Canal & Land Co.,* 142 Cal. 208, 212, 75 Pac. 770.

It follows that, even if the stock was transferred to the defendant by Mrs. LaFontaine for the purpose of putting it beyond the reach of attachment by her creditors and even though any value which might be

in it above the claim of the bank would not be needed to pay those having claims against the estate, the plaintiff, nevertheless, is entitled to make that value available to the estate.

Claims of error not included within the scope of the foregoing discussion do not merit attention.

There is no error.

In this opinion the other judges concurred.