[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Re: Motion to Strike Special Defenses #153 Motion to Sever Counterclaim #152
On November 10, 1997, the plaintiff, Webster Bank, brought a complaint against the defendant, Jane Gurtowsky Linsley, alleging the following facts.[1] On April 7, 1989, the defendant executed a promissory note for a loan of $123,700 payable to the order of Union Trust Company (Union Trust) in equal monthly installments of principal and interest. On the same date, the defendant executed a mortgage deed in favor of Union Trust, mortgaging a piece of real estate property, known as 520 Ward Street Extension, Wallingford, Connecticut (property), to secure the note. By an assignment, dated June 28, 1990, Union Trust assigned the note and mortgage to the plaintiff, then known as Derby Savings Bank. The plaintiff is now the record owner of the note and mortgage. The defendant defaulted on the installments due on December 1, 1996, and each month thereafter. The plaintiff elected to accelerate the payment of the balance of the entire debt, now in the amount of $113,684.58 plus interest from November 1, 1996, late charges and collection costs. The defendant has not paid off the accelerated debt. On December 9, 1997, the plaintiff filed a motion for judgment of strict foreclosure and finding of entitlement to possession.
On July 24, 2000, the defendant filed a second amended answer, five special defenses and six count counterclaim.[2] On May 4, 2001, the plaintiff filed a motion to sever the counterclaim, in response to which the defendant filed an objection on May 9, 2001, and the plaintiff filed a reply to the objection on May 21, 2001.
On May 8, 2001, the plaintiff filed a motion to strike the special defenses and counterclaim, supported by a memorandum of law. On May 23, 2001, the defendant filed an objection and a memorandum of law in opposition to the motion to strike. The parties appeared before the court on June 4, 2001, to argue the motions, at which time the plaintiff stated CT Page 8814 that he withdrew the part of the motion to strike as to the counterclaim and limited the motion to strike to the special defenses. The court, therefore, treats the motion to strike as one directed at the special defenses only.
 DISCUSSION Motion to Strike the Special Defenses #153
"Whenever any party wishes to contest . . . the legal sufficiency of . . . any special defense . . . that party may do so by filing a motion to strike the contested pleading. . . ." Practice Book § 10-39; Nowakv. Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978). "A motion to strike admits all facts well pleaded." Parsons v. United Technologies Corp.,243 Conn. 66, 68, 700 A.2d 655 (1997). "A motion to strike is properly granted if the [special defense] alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). The role of the trial court in ruling on a motion to strike is to examine the special defenses, construed in favor of the nonmoving party, here the defendant, to determine whether the special defenses are legally sufficient.Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216,232-33, 680 A.2d 127 (1996). "[I]f facts provable in the [special defense] would support [the special defense], the motion to strike must be denied. . . . Moreover. [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted.) PamelaB. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
The plaintiff moves to strike the special defenses on the ground that they are legally insufficient. Apart from its specific argument against the fifth special defense, the plaintiff has briefed only its general argument that the special defenses fail because they do not address the making, validity or enforcement of the mortgage in its memorandum of law. There is, however, no application of this general argument to each of the first four special defenses in the plaintiffs memorandum of law.[3] The remaining reasons listed in the motion to strike for the claimed legal insufficiency of the special defenses and the bulk of the plaintiffs memorandum of law address the counterclaim and are, therefore, not considered here. The defendant has not raised any objection on procedural grounds that the plaintiff has not distinctly briefed the grounds or reasons of its motion to strike each of the special defenses in its memorandum of law. Absent such an objection, the court can properly consider the motion in the form presented to the court. See Bouchard v. People's Bank, 219 Conn. 465,468 n. 4, 594 A.2d 1 (1991); North Park Mortgage Services,Inc. v. Pinette, 27 Conn. App. 628, 630, CT Page 8815608 A.2d 714 (1992).
In her opposition to the motion to strike the special defenses, the defendant argues first that it is a misconstruction of Connecticut case law for the plaintiff to assert that equitable defenses to mortgage foreclosure are applicable only if they address the making, validity or enforcement of the note and mortgage. She argues next that the special defenses, nevertheless, address the making, validity or enforcement of the note and mortgage. The court now considers her first argument before assessing the legal sufficiency of the special defenses.
"At common law, the only defenses to an action of [foreclosure] would have been payment, discharge, release or satisfaction . . . or, if there had never been a valid lien . . . Moreover, our courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had. . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citations omitted; internal quotation marks omitted.) SouthbridgeAssociates, LLC v. Garofalo, 53 Conn. App. 11, 15-16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). In recognition that a foreclosure action is equitable in nature, courts have also allowed equitable estoppel, CUTPA, laches, breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure, a refusal to agree to a favorable sale to a third party, and lack of consideration to be pleaded as special defenses. See, e.g., Mercantile Bank v.Hurowitz, Superior Court, judicial district of New Haven at New Haven, Docket No. 381091 (May 2, 2000, Celotto, J.); Norwest Mortgage v.Edwards, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 057496 (May 4, 1998, Curran, J.) (22 Conn.L.Rptr. 123, 124).
Numerous Superior Court decisions have held that equitable defenses to mortgage foreclosure are applicable only if they address the making, validity or enforcement of the note and mortgage. See, e.g., MercantileBank v. Hurowitz, supra; Dime Savings Bank of New York, FSB v. Furey, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047557 (April 1, 1996, Curran, J.). "[The] special defenses [listed above] have been recognized as valid special defenses where they were legally sufficient and addressed the making, validity or enforcement of the mortgage and/or note. The rationale behind this is that . . . special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action. . . . Further, based on the same CT Page 8816 rationale, the defenses . . . cannot attack some act or procedure of the lienholder." Mercantile Bank v. Hurowitz, supra; Dime Savings Bank of New York. FSB v. Furey, supra.
The defendant cites a few Supreme Court cases, such as Lettierri v.American Savings Bank, 182 Conn. 1, 12, 437 A.2d 822 (1980), and Hamm v.Taylor, 180 Conn. 491, 497, 429 A.2d 946 (1980), to support its argument that the above holding is erroneous and that "a [c]ourt of equity "should hear all claims and defenses relative to alleged inequitable conduct" of the mortgagee in a foreclosure action. The defendant relies on the maxim that she who comes into equity must come with clean hands to support her implicit argument that the court in a mortgage foreclosure action should consider any allegation of inequitable conduct of the mortgagee toward the mortgagor in their business relation, even though it is not related to the making, validity or enforcement of the note and mortgage.
There is no merit to the defendant's attack on the well established principle of law limiting the applicability of equitable defenses in mortgage foreclosure. Contrary to the defendant's assertion, the Supreme Court has long held that equitable defenses to mortgage foreclosure must be limited to the making, validity or enforcement of the note and mortgage. See Boretz v. Segar, 124 Conn. 320, 323-24, 199 A. 548 (1938) (equitable defense to mortgage foreclosure is limited to "the transaction under consideration" or "the matter in litigation"); see also Thompsonv. Orcutt, 59 Conn. App. 201, 205-206, 756 A.2d 332 (same), cert. granted on other grounds, 254 Conn. 934, 761 A.2d 758 (2000).
In Orsi v. Orsi, 125 Conn. 66, 3 A.2d 306 (1938), the defendant was obligated under a lawful agreement not to compete with his former partner in the restaurant business within one mile of the restaurant for a period of ten years. He nevertheless purchased a vacant lot across the street from that restaurant with the intent to open a restaurant under the name of the plaintiff, his brother. He conveyed the title to the lot to the plaintiff, intending to achieve the illegal purpose of competing with his former partner. The defendant soon abandoned his plan, and the plaintiff conveyed the title back to the defendant. Thereafter, the plaintiff brought the action for reconveyance of the title back to him, arguing that the defendant should be estopped from contesting the his "equitable" title to the property because the defendant's prior conveyance of the title to him was motivated by the illegal purpose. The Supreme Court rejected his argument, finding it immaterial whether the original transaction was motivated by the illegal purpose as long as the subsequent conveyance of the title was not vitiated by misrepresentations, improper influences or the breach of a confidential relationship. Id., 70. The court affirmed the trial court's ruling that the original illegal purpose could not be taken into consideration CT Page 8817 because it did not "taint" the plaintiffs subsequent voluntary and knowing conveyance of the title to the defendant, which was the "matter in litigation" or "transaction under consideration" in the action for reconveyance. Id.
"The maxim [that he who comes into equity must come with clean hands] only applies to the particular transaction under consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or question his general character for fair dealing. The wrong must be done to the defendant himself and must be in regard to the matter in litigation. Lyman v.Lyman, 90 Conn. 399, 406, 97A. 312; LaFrance v. LaFrance, 122 Conn. 556,559, 191 A. 334. Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case. Yale Gas Stove Co. v. Wilcox, 64 Conn. 101, 128, 29 A. 303;LaFrance v. LaFrance, supra, 560. The principle where it applies does not give or confirm title but exhausts itself in preventing a party from asserting in court a title where, in order to do so, he must rely upon a transaction tainted with illegality or inequity. Finnegan v. LaFontaine,122 Conn. 561, 570, 191 A. 337." (Emphasis added; internal quotation marks omitted.) Orsi v. Orsi, supra, 125 Conn. 69-70. The "matter in litigation" or "the transaction under consideration" in mortgage foreclosure is the making, validity and enforcement of the note and mortgage, not the general, unrelated conduct of the mortgagee. See Boretzv. Segar, supra, 124 Conn. 323-24; Thompson v. Orcutt, supra,59 Conn. App. 205-206.
The Supreme Court cases cited by the defendant do not support the defendant's argument that equitable defenses to mortgage foreclosure should not be limited to the making, validity or enforcement of the note and mortgage. For instance, Lettierri v. American Savings Bank, supra,182 Conn. 12, and Hamm v. Taylor, supra, 180 Conn. 497, relied on by the defendant, simply reiterate the general principle that the trial court has equitable powers, on the basis of equitable considerations and principles, to deny foreclosure or decrease the amount of the stated indebtedness. They do not hold that the court should deny foreclosure simply because the mortgagee has committed certain inequitable acts against the mortgagor, even if they are not related to the making, validity or enforcement of the note and mortgage.
The defendant's attack on the aforementioned established principle of law in mortgage foreclosure is without merit, and the court proceeds to assess each of the defendant's special defenses to determine its legal sufficiency, that is, whether it has alleged sufficient facts to support a claim that attacks the making, validity or enforcement of the note and CT Page 8818 mortgage.
A. The First Special Defense (Breach of Covenant of Good Faith and Fair Dealing)
The first special defense asserts that the plaintiff has breached the covenant of good faith and fair dealing. Specifically, the defendant alleges that she "has tendered all requisite payments to plaintiff and its agents and/or servicer but their records regarding the note and mortgage are incorrect and plaintiff has wrongfully refused numerous timely and properly tendered monthly payments both before and after the alleged default."
"The covenant of good faith and fair dealing has been recognized as a special defense in foreclosure actions." Ocwen Federal Bank FSB v.Weinberg, Superior Court, judicial district of New London at New London, Docket No. 547629 (August 1, 1999, Mihalakos, J.). "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231,238, 618 A.2d 501 (1992). "Bad faith means more than mere negligence; it involves a dishonest purpose." Id., 237.
Bad faith is sufficiently alleged that the plaintiff refused to accept numerous timely and properly tendered monthly payments before declaring default. Assuming the truth of the allegation, as the court must for the moment, the court denies the motion to strike the first special defense.
B. Second Special Defense (Payment)
The second special defense asserts payment. Specifically, the defendant alleges that by way of correspondence, dated February 28, 1997, the plaintiff advised her of a reinstatement sum of $3,573.58, to be paid by a bank check on or before March 30, 1997. She tendered the requested reinstatement payment, but the plaintiff refused to accept it and issued a different and larger reinstatement sum to be paid. The defendant also alleges that she had timely paid all payments due and never defaulted until the plaintiff or its predecessor refused to accept or record payments due in December, 1996, and thereafter, and wrongfully declared a default.
While payment is a recognized special defense to mortgage foreclosure at common law; see Peterson v. Weinstock, 106 Conn. 436, 441, 1138 A. 433
(1927); Superior Court decisions vary in their treatment of the various forms of the payment defense in the context of a motion to strike the defense. Specifically, the decisions vary in their determination whether CT Page 8819 the allegation that the mortgagee refused to accept tendered payment before declaring default constitutes a sufficient defense of payment and thus survives a motion to strike. "For example, in Dovenmuchle v.Brucoli, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 173479 (February 8, 2000, Rodriguez, J.), the court held that a special defense, alleging that `the defendant is not in default, and has been making payments,' was sufficient to withstand a motion to strike in a foreclosure action. In Bank Boston v. Pruitt, Superior Court, judicial district of Tolland at Rockville, Docket No. 067795 (August 11, 1999, Kaplan, J.), the court held that a special defense that alleged that the defendant reinstated his note and mortgage and then tendered subsequent payments that the plaintiff refused to accept sufficiently alleged payment as a proper defense. In Bankers TructCo. v. Mednick, [Bankers Trust Co. v. Mednick], Superior Court, judicial district of New Haven at Meriden, Docket No. 254012 (November 2, 1998, Beach, J.), the court, based upon equitable principals, refused to strike a special defense that alleged that the defendants attempted to make, what they thought were, proper payments but the plaintiff refused to accept them. The court held that this defense, conceivably, alleged payment. In Farmers Mechanics Bank v. Santangelo, Superior Court, judicial district of Middlesex at Middletown, Docket No. 067481 (December 8, 1995, Stanley, J.), the court found sufficient the defendants' allegation that they were not in default because the plaintiff refused to apply their payments to the note. In Bristol Savings Bank v. EFAAcceptance Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 515249 (June 1, 1993, Aurigemma, J.), the court refused to strike a special defense that simply alleged payment without supporting facts, holding that the plaintiff could have obtained additional facts by filing a request to revise. But see CiticorpMortgage, Inc. v. Gibson, Superior Court, judicial district of Waterbury, Docket No. 152248 (April 27, 2000, West, J.) (court granted motion to strike where defendants alleged that the lender's failure to accept payment caused their default holding that this failure did not relate to the making, validity or enforcement of the note); Ocwen FederalBank FSB v. Weinberg, Superior Court, judicial district of New London at New London, Docket No. 547629 (August 11, 1999, Mihalakos, J.) (failure to accept payment and misapplication of payment are improper special defenses to foreclosure actions because they attack the conduct of the lender rather than the making, validity or enforcement of the note);Greenpoint Mortgage Corp. v. Ruisi, Superior Court, judicial district of Danbury, Docket No. 333106 (June 1, 1999, Moraghan, J.) (failure to apply timely payments is a special defense that primarily claims a breach of contract, and it is improper in a foreclosure action)." Fleet MortgageCorp. v. Bruno, Superior Court, judicial district of Windham at Putnam, Docket No. 63054 (March 8, 2001, Foley, J.). CT Page 8820
This court holds that it is a sufficient defense of payment, for purposes of a motion to strike, that the mortgagee refused to acceptproperly tendered payment, that is, full and timely payment of the amount due, before declaring default. Such a conclusion finds support in the statements of law presented in American Jurisprudence (Am.Jur.) and Corpus Juris Secundum (C.J.S.). "It has been held that the mortgagee must unconditionally accept the amount due when properly tendered, and that a good and sufficient tender on the day when payment is due will relieve the property from the lien of the mortgage, except where the refusal was not unreasonable or arbitrary, but grounded on an honest belief that the tender was insufficient." 59 C.J.S. 554, Mortgages § 462 (1998); see also 55 Am.Jur.2d, Mortgages §§ 424 and 426 (1971). "A tender of the amount demanded by the mortgagee is sufficient, although the sum tendered does not entirely agree with the sum afterward found to be due." 59 C.J.S. 558, Mortgages § 463.
The refusal to accept properly tendered payment is a sufficient defense of payment because it addresses the making, validity and enforcement of the mortgage. If the mortgage agreement provides for monthly payment by installment, which is the case here, the mortgagee is obligated to accept a properly tendered installment payment, that is, timely payment of the full amount due. Refusal to accept such a properly tendered payment breaches the mortgage agreement and renders the agreement unenforceable. The mortgagee should be estopped from declaring default and denied foreclosure if its refusal to accept properly tendered payments is the cause of nonpayment by the mortgagor.
The defendant alleges that the plaintiff refused to accept her "timely tendered" payments before declaring default; she has also alleged in the previous special defense that the plaintiff refused to accept "properly tendered" payments before the alleged default. Her allegation, construed in the light most favorable to her, is legally sufficient to make out a defense of payment. See 59 C.J.S., Mortgages §§ 462 and 463; FleetMortgage Corp. v. Bruno, supra, Superior Court, Docket No. 63054. The court, therefore, denies the motion to strike the second special defense.
C. Third Special Defense (Accord and Satisfaction)
The third special defense asserts accord and satisfaction. The defendant repeats her allegations, made in the previous special defense, that the plaintiff refused to accept a properly tendered reinstatement payment that had been determined by the plaintiff.
"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and CT Page 8821 the creditor to negotiate a contract of accord to settle the outstanding claim. . . . An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty . . . Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration. . . . Accord and satisfaction is a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in settlement of the claim and to perform the agreement." (Citations omitted; emphasis omitted; internal quotation marks omitted.) BB Bail Bonds Agency of Connecticut, Inc. v. Bailey,256 Conn. 209, 212-13, ___ A.2d ___ (2001).
The defendant alludes to an agreement to reinstate the defendant and asserts a defense of accord and satisfaction based on this allusion. She has not alleged, however, sufficient facts to show the essential elements of accord and satisfaction. Specifically, she has not alleged that there was a good faith dispute about the existence of the debt or over the amount due, and that the parties negotiated and executed a contract of accord. Her claim of accord and satisfaction is, therefore, a mere conclusion of law that is not supported by the facts alleged, and is therefore subject to the motion to strike. See Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215. To the extent that this special defense duplicates the defense of payment, asserted in the previous special defense, it is merged in that defense. The court, accordingly, grants the motion to strike the third special defense.
D. Fourth Special Defense ("Unclean Hands")
The fourth special defense asserts that the plaintiff should be estopped from foreclosing because of its inequitable conduct or "unclean hands." The defendant incorporates the allegations made in the first two special defenses and alleges further that the plaintiff or its predecessor and their agents "continually called [her] despite her requests they not do so, intimidated and threatened her, disregarded her and her agent's inquiries despite her good faith dispute over their claims of default and asserted debt." The defendant alleges that "[t]hese actions were continual in nature through at least the end of 1998 and have continued through to the present." The defendant alleges further that in January, 1997, and thereafter, an agent or employee of the plaintiff told her and her husband that the plaintiff did not "care" whether her account was correct or current and that "it had more money than her and would ruin her credit rating and make fighting its lawsuit [too] expensive for her to defend if she [did not] just send an extra payment in regardless of whether it was owed." CT Page 8822
"The defense of unclean hands to a mortgage foreclosure has generally been disallowed in this state." Mechanics Farmers Savings Bank, FSB v.Delco Development Co., 43 Conn. Sup. 408, 420, 656 A.2d 1075 (1993) (citing a number of Superior Court decisions), aff'd, 232 Conn. 594,656 A.2d 1034 (1995).[4] The defense has been recognized as a valid defense, however, when it relates to the making, validity or enforcement of the mortgage. See Boretz v. Segar, supra, 124 Conn. 323-24 (unclean hands defense in mortgage foreclosure is limited to "the transaction under consideration" or "the matter in litigation"); Thompson v. Orcutt, supra, 59 Conn. App. 205-206 (same); see also Orsi v. Orsi, supra,125 Conn. 69-70 (same regarding action for reconveyance of real estate title).
Because the same allegation, that the mortgagee refused to accept properly tendered payment before declaring default, has been found to be legally sufficient to support defenses of breach of covenant of good faith and fair dealing and of payment, incorporated here, it is also sufficient to support a defense of unclean hands because the inequitable conduct, as alleged, relates to the validity or enforcement of the note and mortgage. The court, therefore, denies the motion to strike the fourth special defense.
E. Fifth Special Defense (Violations of RESPA)
The fifth special defense asserts violations of the federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq. Specifically, the defendant alleges that the plaintiff violated § 2605 by failing to provide proper notice of default and acceleration prior to the commencement of this action. The defendant alleges further that the plaintiff failed to respond to her "qualified written requests," pursuant to § 2605(e), made in January and March, 1997, and thereafter, for information relating to the servicing of her loan. The defendant argues that the compliance with RESPA provisions is a mandatory condition precedent to foreclosure and that the plaintiff is precluded from bringing or continuing this foreclosure action by its failure to comply with the RESPA provisions.
This special defense fails as a matter of law because a violation of RESPA, by the terms of the act, does not discharge the debt or invalidate the mortgage agreement and, therefore, does not provide a defense to foreclosure. See 12 U.S.C. § 2615 ("[n]othing in this Act shall affect the validity or enforceability of . . . any loan, loan agreement, mortgage or lien made or arising in connection with a federally related mortgage loan"); see also Security Pacific National Bank v. Robertson, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 124622 (August 28, 1997, Hickey, J.). The court grants the motion to CT Page 8823 strike the fifth special defense.
 Motion to Sever the Counterclaim #152
The counterclaim is in six counts. Count one claims violations of the federal Fair Debt Collections Practice Act (FDCPA), 15 U.S.C. § 1692
et seq., alleging that the plaintiff has repeatedly contacted her directly from July, 1997, through present, despite notice given to it that she is represented by counsel. The defendant also alleges that the plaintiff repeatedly harassed, intimidated and threatened her in those improper contacts.
Count two claims violations of Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., alleging that the plaintiff repeatedly refused to accept timely tendered payments both before and after the commencement of foreclosure. The defendant alleges also that in or about January, 1997, an agent of the plaintiff told the defendant and her husband that the plaintiff did not "care" whether her account was accurate and threatened to ruin her credit.
Count three repeats the allegations of FDCPA and CUTPA violations, asserted in the above two counts, and further claims violations of General Statutes § 36a-781 for failure to provide a written statement of payments entitled to her upon her written request for such a statement.
Count four claims intentional infliction of emotional distress based on the allegations made in the above three counts. Count five claims violations of RESPA, based on the allegations made in the fifth special defense, for failure to comply with various disclosure and servicing requirements under the act. Count six claims breach of contract, based on the allegations made in the first, third and fourth special defenses and count two of the counterclaim.
The plaintiff moves to sever the counterclaim from its foreclosure action, arguing that it is within the trial court's discretion to sever the counterclaim, an action at law involving many questions of fact triable to a jury, from its simple foreclosure action, an action in equity not triable to a jury. The plaintiff claims, "upon information and belief," that the defendant will seek a jury trial of her counterclaim.
In her objection to the motion to sever, the defendant claims that she has not sought a jury trial of her counterclaim and that she does not intend to do so. She argues also that her counterclaim arises out of the same transaction as the claims of her special defenses because the facts asserted in the counterclaim are entwined with those asserted in the CT Page 8824 special defenses.
The plaintiff argues, in its reply to the objection, that because the counterclaim attacks its post-default conduct, it is not related to the making, validity or enforcement of the note and mortgage and should, therefore, be severed from the foreclosure action. The plaintiff argues further that the defendant may seek testimony from her husband or other witnesses or even expert testimony to buttress her allegations of damages from the alleged infliction of emotional distress, asserted in the counterclaim, and that the plaintiff will counter such attempt with numerous evidentiary objections. The plaintiff argues that the procedural maneuvering will be time-consuming and will hinder the speedy adjudication of the foreclosure action.
"[I]n any case in which several causes of action are joined in the same complaint, or as matter of counterclaim or set-off in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action. . . ." General Statutes § 52-97; Solomon v. Gilmore, 248 Conn. 769, 772 n. 7, 731 A.2d 280 (1999). "When incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury. . . . Because a counterclaim is an independent action . . . the question presented is whether the . . . counterclaim is essentially legal or essentially equitable. . . . This analysis must be performed in the context of the [counterclaim] when read as a whole. . . . If, upon proper analysis, the trial court determines that the counterclaim is primarily legal, the defendant who asserts it is entitled, as matter of constitutional right, to a jury trial on the counterclaim." (Citations omitted; internal quotation marks omitted.)Connecticut National Bank v. Rytman, 241 Conn. 24, 53, 694 A.2d 1246
(1997) (regarding motion to strike counterclaim from jury list).
There is no question that all six counts of the counterclaim are legal in nature. The defendant is, therefore, entitled, as a matter of constitutional right, to a jury trial on her counterclaim. Even though the defendant has denied any intention to seek a jury trial on her counterclaim, she is nonetheless free to claim the counterclaim to the jury list until she has waived the right to a jury trial. There is no record that she has waived her right, and the court must preserve her right until she has elected for a bench trial on her counterclaim.
"In the interests of preserving both the [defendant's] right to a jury trial on the counterclaim and the plaintiff's right to expeditious CT Page 8825 resolution of the foreclosure action, the trial court has discretion to retain the foreclosure portion of the case on the court side list, while placing the counterclaim on the jury list. . . . In exercising that discretion, the trial court will necessarily have to weigh the possible preclusive consequences that may attach to a decision on the merits of the foreclosure action in advance of a jury trial on the counterclaim." Id., 54. "Factors to consider are the volume and complexity of the issues, the nature of the evidence involved in each action, and pleading issues."Federal National Mortgage Assn. v. Jessup, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169417 (December 8, 2000, Hickey, J.); Middletown v. 180 Johnson Road, Superior Court, judicial district of Middlesex at Middletown, Docket No. 082578 (January 6, 1998, Fineberg, J.).
In addition to preserving the defendant's right to a jury trial on her counterclaim absent a formal waiver, at least two factors weigh in favor of severing the counterclaim. First, except for counts two and six of the counterclaim regarding the alleged refusal by the plaintiff to accept properly tendered payment before declaring default, which repeat allegations made in the special defenses, the rest of the counterclaim attacks the conduct of the plaintiff in servicing the loan or collecting the debt after the declaration of default. Such allegations do not affect foreclosure because they do not attack the making, validity or enforcement of the note and mortgage, and therefore should be severed from the foreclosure action.
Second, the bulk of the counterclaim alleges tortuous conduct of the plaintiffs employees in collecting the debt. The claims of violations of FDCPA and of intentional infliction of emotional distress, based on those allegations, unlike the issue of liability in a foreclosure action, would be inappropriate for summary adjudication because they would necessarily involve many questions of fact regarding motive, intent or negligence and therefore require a trial in the ordinary manner. See Suarez v. DickmontPlastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994) (summary judgment procedure is particularly inappropriate for questions of motive, intent and subjective feelings); Fogarty v. Rashaw, 193 Conn. 442, 446,476 A.2d 582 (1984) (issues of negligence are generally not susceptible of summary adjudication).[5]
Because the defendant has not formally waived her right to a jury trial on her counterclaim and because consideration of the counterclaim together with the foreclosure action will hamper the speedy resolution of the foreclosure action, the court grants the plaintiffs motion to sever the counterclaim from the foreclosure action.
 CONCLUSION
CT Page 8826
The plaintiffs motion to strike is granted as to the third and fifth special defenses, but denied as to the first, second and fourth special defenses. The plaintiffs motion to sever the counterclaim from the foreclosure action is granted.
By the Court,
Kevin E. Booth Judge of the Superior Court